UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ARRMAZ PRODUCTS INC, | |
| Plaintiff, | |
| v. | Case No. 3:23-CV-778-GSL-MGG |
| RIETH-RILEY CONSTRUCTION CO INC, | |
| Defendant. | |

## OPINION AND ORDER

On August 21, 2023, Plaintiff, ArrMaz Products Inc., filed this action against Defendant, Rieth-Riley Construction Co., Inc., alleging infringement of United States Patent Nos. 7,802,941 ("the '941 patent") and 8,465,843 ("the '843 patent") (collectively "the asserted patents"). [DE 1]. On October 20, 2023, Defendant filed an Answer and Counterclaims against Plaintiff. [DE 21]. This matter is before the Court on Plaintiff's Motion for Partial Judgment on the Pleadings against Defendant's Third, Fourth, and Fifth Counterclaims, filed on January 1, 2024. [DE 31]. On May 20, 2024, the Court heard oral arguments on for this motion. [DE 51]. For the following reasons, the Court grants Plaintiff's Motion for Partial Judgment on the Pleadings and dismisses Defendant's Third, Fourth, and Fifth Counterclaims.

## I. RELEVANT BACKGROUND

Both parties are in the business of surface-paving technologies. Plaintiff developed its BondTekk surface-paving technology and has licensed the corresponding patents to various state contractors for public works projects in various states. Plaintiff promotes the BondTekk brand as "improv[ing] bonding between the existing surface and the roadway as compared to conventional paving. The technology also promotes the efficient use of the binder in addressing issues such as

resistance to stress and shear forces, as well as rut resistance. Further, the technology may be used to improve resistance to reflective cracking." [DE 21, ¶ 12]. Defendant provides similar services and products, specifically relating to asphalt paving. [*Id.* at ¶ 14]. Defendant also competes for state contracts that relate to public works asphalt-paving projects. [*Id.* ¶ 17].

The asserted patents relate to "rut resistant coatings for asphalt pavement and methods for applying the coatings" (the '941 Patent) and "crack resistant coating method of applying cracking resistant coating" (the '843 Patent). [DE 38, page 2]. Defendant alleges that Plaintiff procured the '941 Patent only after Plaintiff made affirmative misrepresentations or omissions to the PTO related to prior art references, and that Plaintiff procured the '843 Patent only after improperly listing an individual as an inventor in the earlier '941 patent to avoid a double patenting rejection.

## II.  LEGAL STANDARD

Under Rule 12(c), a party may move for judgment on the pleadings after the complaint and answer have been filed. *See* Fed. R. Civ. P. 12(c); *Supreme Laundry Serv., LLC v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008). Rule 12(c) motions are evaluated under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). As with Rule 12(b)(6) motions, the Court must view the facts alleged in the light most favorable to the non-moving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). A challenged counterclaim will survive a motion for judgment on the pleadings only when the counterclaim "pleads factual content that allows the court to draw the reasonable inference that the [counterclaim-defendant] is liable for

the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III. THIRD COUNTERCLAIM

In its third counterclaim, Defendant alleges that "at least one individual associated with the prosecution of the '941 patent . . . intentionally and deceptively fail[ed] to disclose information material to the patentability of the '941 patent . . . ." [DE 21, ¶ 98]. The alleged misconduct is related to the omission or misrepresentation of prior art to the PTO during the prosecution of the '941 patent. Because of this alleged fraudulent conduct, Defendant argues that the '941 patent is unenforceable and void in its entirety.

#### A.  Standard of Review

Under Rule 9(b), claims alleging fraud or mistake must be pleaded with particularity. Fed. R. Civ. P. 9(b). "Inequitable conduct, while a broader concept than fraud, must be pled with particularity" too. *Exergen Corp. v. Wal-mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (citation omitted). In patent infringement cases, courts shall apply the precedent of the Federal Circuit, not the regional circuit, to determine if a claim for inequitable conduct has been pleaded with particularity under Rule 9(b). *Id.*

Under Federal Circuit precedent, to prevail on a claim of inequitable conduct involving an omission or misrepresentation of prior art, an accused infringer must prove, by clear and convincing evidence, two things: (1) the reference was "material" to the prosecution of the patent and (2) the applicant had "specific intent" to deceive the PTO. *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). These are separate and distinct requirements, i.e., not a sliding scale, "where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa." *Id.*

3

For materiality, the Federal Circuit requires "but-for materiality" to establish inequitable conduct. *Id.* at 1291. "[P]rior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* Further, to meet the particularity requirements of Rule 9(b), the accused infringer "must identify the specific who, what, when, where, and how of the *material* misrepresentation or omission" of the prior art references during prosecution before the PTO. *Exergen Corp.*, 575 F.3d at 1328 (emphasis added). Specifically, the accused infringer must allege several factual bases. First, the pleading must name the specific individual, with a duty to disclose during prosecution, "**who** both knew of the material information and deliberately withheld or misrepresented it." *Id.* at 1329. Second, the pleading must identify **what** "claims, and which limitations in those claims, the withheld references are relevant to, and **where** in those references the material information is found." *Id.* Third, the pleading must "identify the particular claim limitations, or combinations of claim limitations, that are supposedly absent from the information of record . . . . to explain both '**why**' the withheld information is material and not cumulative, and '**how**' an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1329-30.

For specific intent, the accused infringer must demonstrate that the applicant knew of the reference, knew that it was material, and deliberately withheld it. *Therasense*, 649 F.3d at 1290. Courts may rely on indirect or circumstantial evidence because direct evidence of deception is rare. *Id.* But the pleadings must recite sufficient facts "from which the court may *reasonably infer* that a specific individual" had knowledge of the material reference and deliberately withheld it with the intent to deceive the PTO. *Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (emphasis added). Because the accused infringer bears the burden of proof for establishing inequitable conduct, "the patentee need not offer any

good faith explanation" for withholding a material reference, "unless the accused infringer first . . . proves a threshold level of intent to deceive by clear and convincing evidence." *Therasense*, 649 F.3d. at 1291 (citation omitted).

### B. Analysis

#### i. Materiality

To satisfy the materiality requirement for the inequitable conduct standard, Defendant must adequately plead the "who", "what", "where", "why", and "how" of Plaintiff's alleged misrepresentation or omission in front of the PTO, as described in *Exergen*. Plaintiff does not contest that Defendant satisfied the "who" or the "what" in its counterclaim but argues that Defendant's pleading failed to provide sufficient factual support for the "where", the "why", and the "how." [DE 32, page 10-11].

#### a. Who

Defendant alleges that the following individuals each committed inequitable conduct: (1) the prosecuting attorney, Ms. Wilkinson, (2) the inventors of the '941 patent, Mr. Wingo, Mr. Exline, Mr. Cunningham, Jr., and Mr. Barnat, and (3) the president of SemMaterials/Road Science, Mr. Panzer. [DE 38, page 9]. Further, each of these individuals are alleged to be associated with the filing or prosecution of the application for '941, and each of them allegedly knew of material information and deliberately withheld or misrepresented it. [*Id.* at 10]; *see Exergen*, 575 F.3d at 1329. Therefore, the Third Counterclaim sufficiently alleges the "who" of the alleged inequitable conduct.

#### b. What

Defendant does not identify specific claim elements for each of the allegedly withheld references. Only for a couple of the references, Defendant points to a specific element of claim 1

of '941: a "binding material layer containing less than about 11% of the total binding material of the rut resistant coating." [DE 21, ¶¶155-57]. But for the rest of the references, Defendant points to claim 1 generally or to the '941 patent in its entirety. [*Id.*].

Plaintiff does not contest that Defendant adequately pled the "what" prong. [DE 32]. So, for the purposes of this analysis, the Court accepts that the Third Counterclaim sufficiently pleads the "what" prong of the alleged inequitable conduct.

### c.   Where

Plaintiff argues that this counterclaim fails to sufficiently identify the material information in the allegedly omitted prior art references. [DE 32, page 12]. Moreover, Plaintiff argues that Defendant does not explain the relevance of this information to the patentability of claim 1 of '941. [*Id.*]

Defendant points to several prior art references that were allegedly withheld or misrepresented during the prosecution of the '941 Patent. [DE 38, pages 9-11]. These references at issue are: (1) U.S. Patent No. 5,069,578 ("the '578 patent"), (2) an affidavit by Raymond C. Baker, IV (the "Baker Affidavit") [DE 21-1], (3) a SemsMaterials licensing agreement (the "NovaChip Agreement") [DE 21-2], (4) a Road Science licensing agreement (the "BondTekk Agreement") [DE 21-3], (5) the "BondTekk Brochure" [DE 21-6], and (6) the "Louisiana Report" [*Id.*] that was included in the "BondTekk Brochure". Defendant argues that these prior art references disclose the invention that is at the core of the '941 patent. [DE 38, pages 9-11].

Specifically, Defendant first alleges that the '578 patent discloses "each and every element of the claimed method steps in the 941 patent," including the limitation of a "binding material layer containing less than about 11% of the total binding material of the rut resistant coating." [*Id.*]. Second, Defendant alleges that the Baker Affidavit, NovaChip Agreement, the

BondTekk Agreement, BondTekk Brochure, and the Louisiana Report disclose equipment for applying the '941 patented technology (i.e., RoadTec SP-200 and other spray pavers), and therefore anticipate claim 1 of the '941 patent. [*Id.*]. Also, Defendant argues that the NovaChip Agreement and the BondTekk Agreement purportedly cover the '578 patent and '941 patent, respectively, and that these two Agreements demonstrate that the '578 and '941 technologies are identical. [*Id.*].

Plaintiff argues that Defendant fails to identify any specific material information in the prior art references and explain their relevance to the patentability of the '941 patent. For example, Defendant failed to connect any information in the allegedly withheld references to the claim limitation: a "binding material layer containing less than about 11% of the total binding material of the rut resistant coating." [DE 42, page 3]. Plaintiff noted that, in Defendant's Response Brief, Defendant only referenced five paragraphs from its Answer in connection to the "less than about 11%" limitation. *Id.* (referencing ¶¶ 44-47, 65, and 89 of Defendant's Answer). And Plaintiff argues that these five paragraphs only make general references to the allegedly omitted prior art without identifying where the "less than about 11%" limitation is disclosed within the references. *Id.* Moreover, none of these paragraphs are in the Third Counterclaim, but instead the First. *Id.*

Here, Defendant fails to sufficiently identify the "where" element for the Third Counterclaim. The Third Counterclaim and Defendant's briefing for the instant motion identify several pieces of prior art. Defendant alleges that Plaintiff failed to disclose or misrepresented information in these references to the PTO. Defendant further alleges that these references contain information related to the '578 Patent, industry spray pavers, and BondTekk Technology, and that this information would affect the patentability of the '971 Patent. However, Defendant

fails to point to specific locations in the references that would demonstrate that these references do indeed disclose the alleged information. Instead, Defendant refers to these references generally and only uses conclusory statements to support its allegations. Therefore, the Third Counterclaim fails to sufficiently allege the "where" of the alleged inequitable conduct.

### d.   Why and How

Plaintiff argues that the pleading does not explain why the allegedly withheld information is material and not cumulative. [DE 32]. Further, Plaintiff argues that Defendant fails to explain how the Patent Office would have assessed patentability differently for claim 1 of '981 as it relates to the allegedly omitted prior art references. [*Id.*].

Defendant alleges that the "withheld information is material to patentability . . . because but-for the withholding of the fact that the P-200 Spray Paver performs all the steps of the claimed method . . . [and] the information that NovaChip (covered by the 578 Patent) also falls within the scope of the 941 Patent . . . the 941 Patent would not have issued." [DE 38, page 10]. Specifically, Defendant first argues that the NovaChip Agreement teaches that various spray pavers, like the RoadTec SP-200 Spray Paver, are "the equipment for applying" the NovaChip technology—allegedly covered by the '981 patent. [DE 38, page 11]. Second, Defendant argues that both the '578 and the SP-200 Spray Paver were both cited by the Examiner in the initial denial of the '941 patent application— "demonstrating their material, non-cumulative nature." [*Id.* at 13]. Third, Defendant argues that the BondTekk Brochure contains several material articles, including the Louisiana Report, that "showed that it was known to apply the purported technology claimed in the 941 Patent with spray pavers . . . years prior to the filing date of the 941 Patent, anticipating all the steps of the method claimed in claim 1 of the 941 Patent." [DE 38, page 10].

Here, Defendant fails to sufficiently identify the "why" and the "how" elements for the Third Counterclaim. Defendant first argues that the NovaChip Agreement is material because it discloses spray pavers that anticipate the '941 patent. But Defendant fails to explain why the NovaChip Agreement is not cumulative or how the PTO would examine it differently to assess patentability. As Defendant admits, the Examiner did review and consider the NovaChip Agreement during the initial prosecution. It was not undisclosed, and the Examiner relied on its assessment of the NovaChip Agreement to ultimately issue the '941 Patent. This argument fails. Next, Defendant argues that because the Examiner cited both the '578 Patent and the SP-200 Spray Paver during prosecution, then they must both be material and non-cumulative. But again, Defendant admits that the Examiner relied on these references in its evaluation of the '941 Patent application. Defendant does not offer any alternative theories of how the Examiner would use these references differently. Because Defendant doesn't provide anything beyond conclusory statements that these references are material and not cumulative, this argument also fails. Last, Defendant argues that the BondTekk Brochure is material because it describes all the steps in claim 1 of the '941 patent. Defendant only dedicates two sentences to this effect on page 10 of its Response to the instant motion and does not further explain why the information in the BondTekk Brochure is material and non-cumulative. This argument also fails.

Therefore, the Third Counterclaim fails to sufficiently allege the "why" and "how" of the alleged inequitable conduct.

According to the *Exergen* standard, Defendant must sufficiently plead the "who", "what", "where", "why", and "how" of the materiality prong. Failure to plead any one of these elements would be fatal to the materiality prong and to the counterclaim. Since the Court finds that Defendant failed to sufficiently plead the "where", "why", and "how" of the alleged inequitable

9

conduct, the Third Counterclaim fails to sufficiently allege materiality. Therefore, the Third Counterclaim should be dismissed for failure to meet the pleading standard.

       *ii. Specific Intent*

As a preliminary matter, the parties disagree as to the proper legal standard regarding the scienter requirement of an inequitable conduct claim. Plaintiff argues that, to survive a Rule 12(c) motion, the pleading must demonstrate that the individual's deceptive intent in withholding prior art is "*the most reasonable* inference drawn from the evidence . . . ." [DE 32, page 8] (quoting *Unverferth, Mfg. Co. v. Par-Kan Co.*, 2014 WL 2206922 (N.D. Ind. May 27, 2014) (citing *Therasense*, 649 F.3d at 1291)) (emphasis added). On the other hand, Defendant argues that "inequitable conduct at the pleading stage only requires facts supporting *a reasonable inference*" of specific intent to deceive—a lower threshold. [DE 38, page 16] (citation omitted) (emphasis added); *see Exergen*, 575 F.3d at 1329 n. 5. Defendant further argues that Plaintiff's "*most reasonable* inference" standard is an evidentiary standard, not to be applied at the pleading stage. Instead, the pleading stage only demands the lower standard of "*a reasonable* inference." [DE 38, page 15]. The Court agrees with Defendant and applies this lower standard.[1]

Plaintiff argues that even after applying this lower standard of just "a reasonable inference," Defendant still fails to plead deceptive intent by each of the named individuals. [DE 42, page 10]. Specifically, Plaintiff argues that the pleadings fail "to identify any 'specific

---

[1] Several district courts have recognized the confusion in interpreting *Therasense* for whether the "most reasonable inference" evidentiary standard should also be applied to pleading standards. *See, e.g., iLife Techs. Inc. v. AliphCom*, No. 14-CV-03345-WHO, 2015 WL 890347, at *4 n.1 (N.D. Cal. Feb. 19, 2015) ("I recognize that there is currently a dispute among courts as to the pleading requirements for an inequitable conduct counterclaim."). But the majority position favors application of the lower standard. *See, e.g., Front Row Tech., LLC v. NBA Media Ventures, LLC*, 163 F.Supp. 3d 938, 987 (D.N.M. 2016). Moreover, in a post-*Therasense* decision, the Federal Circuit affirmed the *Exergen* pleading standard of just a "reasonable inference" in its review of a motion to dismiss an inequitable conduct counterclaim. *Delano Farms Co.* 655 F.3d at 1350. Plaintiff appears to concede to the lower standard in subsequent briefing and during oral arguments.

information' in each of the references that the individuals not only knew of, but also appreciated to be material to the pending patent claims." [DE 42, page 5]. In its memorandum to the instant motion, Plaintiff reduces Defendant's arguments for specific intent to: "because the inventors supposedly created the company's 'key technology,' because Ms. Wilkinson was the prosecuting attorney . . . [and] because Mr. Panzer was the president of the company . . . each of these six individuals was somehow aware of the supposed materiality" of each of the allegedly omitted or misrepresented prior art references—only conclusory statements. [DE 32, page 13-14]. Further, in its reply brief, Plaintiff argues that Defendant failed to properly plead "on information and belief." [DE 42, page 5]. While conceding that *Exergen* allows reliance on "information and belief," Plaintiff argues that the pleading must still "[set] forth the specific facts upon which the belief is reasonably based." [*Id.* at page 6] (quoting *Exergen*, 575 F.3d at 1330). However, Plaintiff argues that Defendant's counterclaim fails to allege any such facts. [*Id.*].

Regarding Mr. Panzer and all the named inventors of the '941 Patent, Defendant argues that each of them are employees of Road Science with knowledge of the application for the '941 Patent. [DE 38, page 17]. Therefore, each must be "familiar with Road Science's other patents and products," like the '578 Patent, and be "reasonably familiar with how their own NovaChip technology was applied, including with SP-200 Spray Paver and other spray pavers . . . ." [*Id.*]. Similarly, regarding Ms. Wilkinson, Defendant argues that because Ms. Wilkinson prosecuted the '941 Patent, she must be "conversant with Road Science's other offering in the field such as NovaChip . . . and aware of the references attached to Road Science's own brochure marketing BondTekk, including the 'Louisiana Report' and its discussion of NovaChip." [*Id.*].

After considering the pleadings and oral arguments, the Court finds that Defendant fails to plead sufficient facts for the Court to reasonably infer deceptive intent by each of the six

named individuals. Specifically, in the Third Counterclaim, Defendant fails to allege facts to justify a reasonable inference that each of the six individuals actually knew of the omitted or misrepresented references, knew of specific information within each reference that was material to the claims of the '941 patent, and actually appreciated the materiality of that information to the asserted claims. Instead, Defendant's pleas rely mostly on "information and belief." While these types of pleadings are permissible, Defendant must still set forth specific facts upon which the belief is reasonably based. *See Exergen*, 575 F.3d at 1330. But Defendant's pleadings only make conclusory statements or insufficient factual allegations regarding the six individuals' alleged specific intent to deceive.

For Ms. Wilkinson, Defendant fails to provide specific facts demonstrating her deceptive intent in front of the PTO beyond imputing to her general knowledge of the materiality of all the alleged omitted or misrepresented prior art references by virtue of her position as the prosecuting attorney. Instead, Defendant only makes a conclusory statement that Ms. Wilkinson was "aware of the importance of the [prior art] because she made misrepresentations to the PTO about those references." [DE 38, page 17]. Not only is this conclusory but also a circular argument. Further, Defendant argues deceptive intent by referencing a post-issue filing by Ms. Wilkinson. [DE 21, ¶ 90]. This filing is a request for reexamination in which Ms. Wilkinson seeks to clarify previous comments that she made about prior art during the '941 prosecution. [DE 42-1]. Ostensibly, this filing demonstrates Ms. Wilkinson's candor rather than deceptive intent, and Defendant fails to expound on its theory of deceptive intent relating to this filing. [*Id.*].

For Mr. Panzer and the four inventors, Defendant imputes general knowledge of the materiality of the references by virtue of their position as employees for Plaintiff, which was "in the relevant field at the same time" as the prosecution of the asserted patents and marketing of

the related technologies. But Defendant again fails to provide sufficient facts that justify a reasonable inference that Mr. Panzer and the inventors knew of the references, appreciated their materiality to the asserted claims, or that they had specific intent to deceive the PTO. Not only does Defendant fail to allege sufficient facts to satisfy the particularity requirements under Rule 9, but Defendant may even fail to meet general pleading requirements under Rule 8 with regard to these individuals. *See* Fed. R. Civ. P. 8(a).

Because Defendant fails to allege sufficient facts for the Court to make a reasonable inference of specific intent to deceive, the Third Counterclaim does not sufficiently plead inequitable conduct. Therefore, the Third Counterclaim should be dismissed.

## IV. FOURTH COUNTERCLAIM

In its fourth counterclaim, Defendant alleges that "at least one individual associated with the prosecution of the '843 patent . . . intentionally and deceptively fail[ed] to disclose information material to the patentability of the '843 patent . . . ." [DE 21, ¶ 192]. The alleged misconduct is related to the alleged false representation of and petition for an individual to be added as an inventor to the '941 patent, so that the '843 patent could overcome an initial double patenting rejection by the PTO. Because of this alleged fraudulent conduct, Defendant argues that the '843 patent is unenforceable and void in its entirety.

### A. Standard of Review

Under Rule 9(b), claims alleging fraud or mistake must be pleaded with particularity. Fed. R. Civ. P. 9(b). "Inequitable conduct, while a broader concept than fraud or mistake, must be pled with particularity" too. *Exergen Corp*, 575 F.3d at 1326 (Fed. Cir. 2009) (citation omitted). In patent infringement cases, courts shall apply the precedent of the Federal Circuit, not

the regional circuit, to determine if a claim for inequitable conduct has been pleaded with particularity under Rule 9(b). *Id.*

Under Federal Circuit precedent, to prevail on a claim of inequitable conduct involving a misrepresentation in front of the PTO, the claimant must plead "sufficient underlying facts from which a court may *reasonably infer* that a specific individual… misrepresented [] information with a specific intent to deceive the PTO." *See id.* at 1328-29.

### B. Analysis

Defendant argues that, during the prosecution of the '843 patent, Plaintiff filed a petition with the PTO that falsely represented that Mr. Barnat was an inventor of the '941 patent. [DE 21, ¶ 225]. The reasoning behind this allegation is as follows. When it was issued, the '941 patent named Mr. Wingo, Mr. Exline, and Mr. Cunningham, Jr. as the sole inventors. [*Id.* at ¶ 224]. The later '843 patent named the same individuals as inventors, plus an additional individual: Mr. Barnat. [*Id.*]. At some point during its prosecution, the '843 patent application was rejected as being unpatentable on the grounds of double patenting in view of the '941 patent over U.S. Patent Application Publication No. 2009/0097918. [*Id.* at ¶ 206]. In response to this rejection, Ms. Wilkinson filed declarations on behalf of all four inventors in support of adding Mr. Barnat as an inventor to the earlier '941 patent. [*Id.* at ¶¶ 209-10, 214-15]. This petition was successful, and Mr. Barnat was added as an inventor to the '941 patent. [*Id.* at ¶ 224]. With the same inventors listed on the '941 and the '843 patent, the double patenting rejection was successfully traversed and the '843 patent was allowed. [*Id.*].

In its counterclaim, Defendant alleges that Mr. Barnat is not an inventor of the '941 patent, that Ms. Wilkinson and all four inventors knew that Mr. Barnat was not an inventor of the '941 patent, and that all five of these individuals engaged in inequitable conduct by falsely

representing to the PTO that Mr. Barnat was an inventor of the '941 patent just so that the '843

patent would be allowed to issue. [DE 21, ¶ 227]. Defendant argues that it's reasonable to infer

that Mr. Barnat was not actually an inventor of the '941 patent because he was added more than

a year after the '941 patent issued, and this was only after the '843 patent application was

rejected for double patenting over '941. [DE 38, page 18]. Further, Defendant alleges that Mr.

Barnat was aware of the '941 patent at the time it was issued because Mr. Panzer wrote a letter

that threatened to enforce Road Science's patent rights, including claim 1 of the '941 patent, and

the letter listed Mr. Barnat as a contact person. [DE 21, page 55; DE 21-5].

Plaintiff argued that the initial omission of Mr. Barnat as an inventor on the '941 patent

application was just an inadvertent mistake. [DE 32, page 15-16]. Regarding Mr. Panzer's letter,

Plaintiff disputes that there are sufficient facts to suggest that Mr. Barnat ever read or knew of

the contents of the letter. [DE 42, page 12]. Moreover, Plaintiff points out that Mr. Panzer's letter

references both the '941 patent and the '843 patent (which always named Mr. Barnat as an

inventor) and that the letter lists another employee as a contact person too, in addition to Mr.

Barnat. [DE 32, page 17]. Plaintiff argues that Defendant failed to plead with particularity the

specific intent to deceive by Ms. Wilkinson and the other inventors too.

The parties also disagree as to the significance of the Federal Circuit's decision in

*Ferring B.V. v. Barr Lab'ys., Inc.*, 837 F.3d 1181 (Fed. Cir 2016). Defendant argues that *Ferring*

supports a finding of an intent to deceive in the instant case because all the named individuals

stayed silent as to Mr. Barnat's inventorship in the '941 patent until after the '843 patent was

rejected. [DE 38, page 19]. On the other hand, Plaintiff argues that *Ferring* supports a finding of

materiality and intent only where the PTO expressed concern regarding the objectivity of certain

declarations and the relationship of the declarants with the applicant, which Plaintiff argues is not the case here. [DE 42, page 12].

In the instant case, Defendant fails to plead sufficient facts for the Court to reasonably infer deceptive intent by each of the six named individuals. To be successful, the Fourth Counterclaim must include sufficient facts to justify a reasonable inference that 1) Mr. Barnat was not a properly named inventor of the '941 patent, 2) that at least Ms. Wilkinson, Mr. Panzer, or one of the inventors knew that Mr. Barnat was not a properly named inventor of the '941 patent, and 3) that this person(s) also intended to deceive the patent office during the prosecution of the '841 patent. Defendant pleads on "information and belief" but fails to set forth specific facts upon which the belief is reasonably based. *See Exergen*, 575 F.3d at 1330.

To support the assertion that Mr. Barnat is not an inventor of the '941 patent and was later improperly added to it, Defendant relies solely on the fact that Ms. Wilkinson added Mr. Barnat as an inventor after the '843 patent double patenting rejection. Defendant does not allege any additional facts beyond this timing to support its theory. Nor does Defendant consider or refute any of the numerous benign possibilities as to why Mr. Barnat was added as an inventor to the '941 patent after it was issued. While the pleading standard in this case does not require alleging facts such that inequitable conduct is the "single most reasonable inference," Defendant must still allege enough facts such that inequitable conduct is a "reasonable inference" in the eyes of the Court. The pleadings fail to meet this standard.

Defendant's reliance on the letter written by Mr. Panzer is also insufficient to raise the pleadings to the requisite standard. While Mr. Panzer's letter lists Mr. Barnat as a contact person for certain Road Science patents and other intellectual property, the letter does not state that Mr. Barnat was an inventor of the '843 patent nor that he was not an inventor of the '941 patent. In

16

addition, Mr. Barnat was not the only person listed as a contact person. Without additional facts, the Court cannot reasonably infer that Mr. Barnat knew about the letter, knew about its contents, or knew that he wasn't listed as an inventor on the '941 patent. And further, the Court cannot reasonably infer that Mr. Barnat was not an inventor of the '941 patent and that he was improperly added to overcome a rejection in the '843 patent prosecution.

The Court also finds Defendant's reliance on the Federal Circuit's decision in *Ferring* to be misplaced. In *Ferring*, the court found that the record contained sufficient factual allegations to support a finding of deceptive intent. *Ferring*, 837 F.3d at 1193. There, the patent applicant had submitted several non-inventor affidavits to the PTO during prosecution at the request of the examiner. *Id.* at 1190. Contesting the genuineness of the affidavits, the accused infringer offered evidence that suggested that the applicant had deliberately concealed past relationships between the applicant and the declarants of the affidavits. *Id.* at 1193. The court agreed that the patent applicant had engaged in a pattern of misconduct by deliberately concealing these past relationships, and that "the applicant [was] on notice as to the materiality of information regarding the declarants' ties to [the applicant]" because the examiner had specifically requested the affidavits and expressed concerns about their objectivity. *Id.* at 1190. Therefore, the evidence proffered by the defendant was sufficient to justify a reasonable inference of deceptive intent to withhold information from the PTO. *Id.*

Here, unlike in *Ferring*, Defendant does not allege any facts that support the conclusion that Plaintiff concealed past relationships between Plaintiff and affidavit declarants, or that Plaintiff withheld or concealed any other information relating to the affidavits submitted during the prosecution of the '941 or the '843 patent. In addition, Plaintiff submitted inventor affidavits on its own initiative. The PTO never expressed any concern regarding the objectivity of these

affidavits, and no other circumstances exist that warrant the Court holding that Plaintiff should have been "on notice" for some special materiality of information, like in *Ferring.* The Court agrees with Plaintiff, and the Court finds that *Ferring* is inapplicable to the instant case.

Defendant fails to allege sufficient facts for the Court to make a reasonable inference of specific intent to deceive the PTO during the prosecution of the '843 patent. Therefore, the Fourth Counterclaim does not meet the pleading requirements for inequitable conduct and should be dismissed.

## V.  FIFTH COUNTERCLAIM

In its fifth counterclaim, Defendant alleges that Plaintiff "has engaged in a pattern of anticompetitive conduct by fraudulently procuring and then attempting to enforce [the asserted patents], which it knew were invalid . . . to illegally acquire monopoly power in Indiana and U.S. markets for bonded-paving technology." [DE 21, ¶ 231]. Because of this alleged predatory and anticompetitive conduct, Defendant seeks an injunction to permanently enjoin Plaintiff from asserting the '941 and '843 patent. [*Id.* at ¶ 235]. Defendant also seeks compensatory damages, special damages, treble damages, attorney fees, and other costs. [*Id.*].

### A.  Standard of Review

"[T]o prevail on a *Walker Process* claim, the antitrust-plaintiff must show two things: first, that the antitrust-defendant obtained the patent by knowing and willful fraud on the patent office and maintained and enforced the patent with knowledge of the fraudulent procurement; and second, all the other elements necessary to establish a Sherman Act monopolization claim." *TransWeb, LLC v. 3M Innovative Properties Co.*, 821 F.3d 1295, 1306 (Fed. Cir. 2016). *See Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 173-174 (1965).

For the first prong of the *Walker Process* claim, the claimant must plead fraud with particularity under Rule 9(b).[2] Gideon Mark & T. Leigh Anenson, *Inequitable Conduct and Walker Process Claims After Therasense and the America Invents Act*, 16 U. PA. J. BUS. L. 361, 398 (2014). For the second prong, the claimant must plead all the other elements of a Sherman Act monopolization claim, subject to the Rule 8(a)(2) pleading standard. *Pac. Bell Tel. Co. v. linkLIne Commc'ns, Inc.*, 555 U.S. 438, 456 (2009).

> The "other elements" necessary to establish an attempted [Sherman Act] monopolization claim are: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." In determining the dangerous probability of achieving monopoly power for element (3), the courts look at "the relevant market and the defendant's ability to lesson or destroy competition in the market."

*TransWeb*, 821 F.3d at 1306 (citation omitted).

### B.  Analysis

Plaintiff argues that Defendant fails to meet the pleading requirements as to either the fraud or the antitrust prong of its *Walker Process* claim. [DE 32, page 21].

For the fraud prong, Plaintiff relies on its arguments against the Third and Fourth Counterclaims. [*Id.* at page 19]. Because Defendant relies on its allegations in the Third and Fourth Counterclaims to support its *Walker Process* fraud allegations, Plaintiff asserts that since

---

[2] Plaintiff initially argues that *Walker Process* fraud is subject to a higher standard than inequitable conduct. *See Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007) (requiring "higher threshold showings of both materiality and intent than are required to show inequitable conduct."). But Plaintiff appears to concede in its reply that, post-*Therasense*, *Walker Process* fraud is now only subject to the Rule 9(b) particularity requirements—same as inequitable conduct.

those other counterclaims fail to plead inequitable conduct with particularity, the *Walker Process*

claim fails for the same reason. Alternatively, Plaintiff argues that *Walker Process* fraud

allegations require a higher threshold showing than inequitable conduct claims for both

materiality and intent. [*Id.*]. Under this higher threshold, Plaintiff argues that the *Walker Process*

claim fails again. Defendant counters Plaintiff's proposed higher standard. Defendant argues that

the *Therasense* Court revised the standard for proving inequitable conduct such that it aligns with

the fraud prong of a *Walker Process* claim. [DE 38, page 19]. Substantively, Defendant relies on

its same allegations in the Third and Fourth Counterclaim to support its fraud allegations for this

*Walker Process* Claim.

   For the antitrust prong, Plaintiff argues that Defendant fails to plead sufficient facts that

Plaintiff engaged in anticompetitive conduct and to properly define a relevant market. Regarding

anticompetitive conduct, Plaintiff argues that the claims do not include sufficient facts to justify

a reasonable inference that there is a realistic probability that Plaintiff's conduct could achieve

monopoly power in the relevant market. [DE 32, page 22]. *See Spectrum Sports, Inc. v.*

*McQuillan*, 506 U.S. 447, 459 (1993). Regarding the relevant market, Plaintiff argues that the

claims do not reference consumer demand for the product or for its reasonable substitutes, nor do

they allege sufficient facts to justify defining both the state of Indiana and the entire United

States as the relevant markets. [*Id.* at page 22-23]. *See Delano Farms*, 655 F.3d at 1351-52.

   The Court finds that Defendant fails to allege sufficient facts to satisfy the pleading

requirements for a *Walker Process* claim. For the first prong, Defendant relies only on its

arguments for inequitable conduct for the Third and Fourth Counterclaim. The Court dismissed

these claims for failing to meet the requisite pleading standard. Therefore, Defendant fails under

the first prong for a *Walker Process* claim, which by itself is dispositive.

Defendant also fails under the second prong for a *Walker Process* claim. In its pleadings, Defendant relies on conclusory statements to allege Plaintiff's anticompetitive conduct. Defendant also erroneously claims that Plaintiff did not contest this element. [DE 38, page 21] ("ArrMaz does not argue that Rieth-Riley failed to plead the first two anti-trust elements: engaging in predatory or anticompetitive conduct with specific intent to monopolize"). But Plaintiff did argue that Defendant's "allegations of anticompetitive conduct . . . are not supported by any factual allegations." [DE 32, page 22]. Because of this oversight, Defendant fails to provide sufficient facts in either its response to the instant motion or in its Complaint to support a reasonable inference of Plaintiff's anticompetitive conduct. Further, Defendant fails to provide sufficient facts to support its definition of the relevant market as "bonded paving technology" in Indiana and the entire United States. In the pleadings, Defendant includes a quotation, purportedly by Plaintiff, that references hot mix asphalt emulsion and stone mix asphalt emulsion. [DE 38, page 21]. However, Defendant does not explain how this quotation relates to the asserted patents, or generally to either BondTekk or NovaChip technologies. In addition, during oral arguments, neither Plaintiff nor Defendant were able to identify what literature was the source of this quotation. Without factual allegations related to the relevant products, corresponding competitor products, or geographic scope of the market, the Court finds that Defendant failed to properly define the relevant market.

Because Defendant fails to allege sufficient facts under either prong of a *Walker Process* claim, the Fifth Counterclaim should be dismissed.

### VI. FUTURE LEAVE TO AMEND

Under Rule 15(a)(1), a party may amend its pleading once as a matter of course "within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is

required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier." In all other cases, the party must obtain the opposing party's written consent or seek leave of the Court. Fed. R. Civ. P. 15(a)(2).

Defendant asks the Court for leave to amend its pleadings if the Court determines that any of Defendant's Counterclaims lack sufficient factual support. Plaintiff asks the Court to deny Defendant's request because any such amendment would be futile.

The deadline to amend pleadings was June 11, 2024. Given that this order is issued past the deadline, the Court extends the deadline to amend pleadings to July 1, 2024. If an amended pleading is filed, the Court orders that the moving party include a cover sheet that alerts the Court to the paragraphs that have been modified, added, or deleted.

## **CONCLUSION**

For the aforementioned reasons, the Court GRANTS Plaintiff's Motion for Partial Judgment on the Pleadings, DISMISSES Defendant's Third, Fourth, and Fifth Counterclaims, and EXTENDS the deadline for amended pleadings to July 1, 2024.

SO ORDERED.

ENTERED: June 18, 2024

/s/ GRETCHEN S. LUND
Judge
United States District Court