UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ARRMAZ PRODUCTS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:23-cv-778-GSL-AZ |
| RIETH-RILEY CONSTRUCTION CO., INC., | ) ) ) ) |
| Defendant. | ) ) |

# OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Protective Order [DE 97], filed on August 12, 2025. Plaintiff ArrMaz Products Inc. ("ArrMaz") has sought and noticed a deposition of Defendant Reith-Riley Construction Company, Inc.'s ("Reith-Riley") President and CEO Keith Rose. Defendant seeks a protective order from the Court prohibiting the deposition from occurring under what is commonly known as the "apex witness doctrine" which is designed to shield high-level executives from the burdens of discovery when they do not possess relevant unique personal knowledge of the issues in a case. On September 24, 2025, the Court held a hearing on the matter and heard argument from counsel. The Court finds that the apex doctrine does not prohibit Rose's deposition under these circumstances. Accordingly, the Court will deny the motion.

## Background

This is a patent dispute in which Plaintiff ArrMaz alleges that Defendant Reith-Riley willfully infringed on two of its patents relating to asphalt surface paving.

*See generally* DE 1 (Compl.) at ¶¶ 6-30. Fact discovery in this case is nearly complete and shortly after Rieth-Riley moved for protective order, ArrMaz deposed Reith-Riley's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6). That deposition contained testimony which sets the stage for this dispute including "the reasons underlying Reith-Riley's decision to not license the Asserted Patents." *See* DE 105-3 (Pl.'s Amended Second Notice of 30(b)(6) Dep.).

As testified to by Reith-Riley's corporate representee and Regional Vice President Scott Stine, Reith-Riley learned of the two patents at issue sometime in 2019. Sometime thereafter, Reith-Riley's senior management met to discuss whether the company should license the patents. Stine attended this meeting and was joined by the company's vice-president, another regional manager, the company's general counsel, and most importantly for present purposes, Reith-Riley's President and CEO Keith Rose. According to Stine, what emerged from this meeting was a "group consensus" not to license the patents at issue because according to Stine, Reith-Riley was lacking sufficient information to assess whether it should. This apparent confusion or lack of information was later documented when Reith-Riley's and ArrMaz's attorneys exchanged letters on the subject before this lawsuit was filed.

But beyond the emergence of the "group consensus," ArrMaz says that Stine failed to provide specific details regarding what was discussed at the meeting or Reith-Riley's decision not to license the patents. In particular, ArrMaz points to the fact that Stine could not recall when this meeting took place beyond sometime in 2019, whether anyone at Reith-Riley had read the patents at issue before coming to

2

its conclusion (he at least had not), and who at Reith-Riley had final authority as to whether the company would pay to license the patents at issue, but importantly, testified that the company's president and CEO Rose would know the answer to that question.[1]

## Discussion

ArrMaz has noticed a deposition of Reith-Riley's President and CEO Rose, and Reith-Riley has moved for a protective order, asking the Court to prevent that deposition from occurring under the "apex witness doctrine." As discussed below, the Court finds that ArrMaz has made a prima facie case that Rose is likely to have unique personal knowledge about the facts of this case and that Reith-Riley has not sufficiently shown that the burdens of having Rose sit for a deposition outweigh the relevance and potential benefit of his testimony.

"As an initial matter, when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition.'" *In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*, 2002 WL 32155478, at *2 (C.D. Cal. Nov. 6, 2002) (cleaned up). The scope of discovery under the Federal Rules of Civil Procedure is intentionally broad because "[d]iscovery is a search for the truth." *Shapo v. Engle*, 2001 WL 629303, at *2 (N.D. Ill. May 25, 2001). But it is not without limits

---

[1] The parties' briefs on this motion have been filed provisionally partially under seal and the parties have likewise requested that many of the supporting documents remain under seal. *See* DE 104 and 108. The motions to seal are still pending, but the Court has ordered the parties to meet and confer to narrow the scope of their motions. DE 115. As such, the Court has avoided extensive quotation or citation to materials presently under seal in this opinion. Instead, throughout this opinion, the Court has described the details at a high level to protect whatever legitimate confidentiality interests the parties may have while providing enough information to explain the Court's reasoning and ruling on the motion for protective order.

3

and "[d]istrict courts have broad discretion in matters relating to discovery" to ensure litigants are not unduly burdened by costly and unproductive discovery. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002); *Donald v. City of Chi.*, WL 621814 at *1, (N.D. Ill. Mar. 3, 2022) (describing "the court's vast, unquestioned discretion" on matters of discovery management).

One such tool that courts have developed to address this issue (and on which Reith-Riley relies) is the apex witness doctrine: "a common-law mechanism to limit overly burdensome discovery requests directed at top-level executive officers of a corporation or entity, particularly where the deposition has certain harassing qualities." *Cruz v. Guevara*, 2024 WL 4449944, at *4, (N.D. Ill. Oct. 9, 2024). One need not be especially imaginative to understand the burdens and potential for harassment that would result if every time a corporation or organization was sued, its high-level executives would have to sit for a deposition as a matter of course even if their knowledge was solely derivative of individuals rungs lower than them on an organizational chart. *See, e.g.*, *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) ("Generally, the courts' rationale for barring those depositions absent the required showing is that high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.").

"When ruling on protective orders for executive depositions, courts generally ask whether: (1) the official has unique personal knowledge of the disputed matter; (2) the information can be collected through less intrusive discovery methods; and (3)

4

the deposition unduly interferes with the officer's professional duties." *In re Deere & Co. Repair Servs. Antitrust Litig.*, 2025 WL 1435061, at *1 (N.D. Ill. May 19, 2025) (citing *Little v. Pritzker*, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020); *accord Fleury v. Union Pac. R.R. Co.*, 2024 WL 1791739, at *1 (N.D. Ill. Apr. 23, 2024) (collecting cases). While there is some disagreement among district courts within this circuit as to whether these factors should be considered in the disjunctive or the conjunctive, "the weight of the authority shows that … courts only reach the latter factors if, as a preliminary matter, the witness has unique personal knowledge of the subject." *In re Deere* at *2 (discussing the development of the apex witness doctrine and varying approaches employed by district courts) (citations omitted). "The party hoping to avoid the deposition has the burden of showing that the apex doctrine should be applied to prevent it." *Fleury*, 2024 WL 1791739, at *1 (citing *Connelly v. Cook Cnty. Assessor's Off.*, 2022 WL 17718411, at *2 (N.D. Ill. Dec. 15, 2022)).

### A. Whether Rose Has Unique Personal Knowledge

The Court begins with the first and most important question: does Mr. Rose have personal knowledge relating to the issues of this litigation? The short answer appears to be an unequivocal "yes." Reith-Riley does not dispute that Rose was personally involved in the company's decision not to license the patent. Instead, Reith-Riley says that Rose does not have any *unique* knowledge beyond what Stine has testified to regarding the 2019 "group consensus" not to license the patents. That may well be the case, but under these circumstances ArrMaz is entitled to test that assertion by deposing Rose.

5

It would be one thing if Rose did not participate in the 2019 meeting and instead merely signed off on the "group consensus" that emerged from a meeting that he did not attend. But that is not what happened here. Rose personally participated in helping "the group" come to consensus on the issue. Indeed, that is what distinguishes the situation before the Court from the cases that Reith-Riley relies on in its briefing. In almost all the cases cited where courts prohibited depositions, the executive or person at the top of the organizational pyramid was not personally involved in anything related to the allegations of the complaint. *Alipourian-Frascogna v. Airways*, No. 2023 WL 5934897, at *7 (N.D. Ill. Sept. 12, 2023) ("This alleged conversation does not demonstrate that Mr. Bulooki has any unique personal knowledge about this case. Indeed, it is clear from Plaintiff's own testimony that Mr. Bulooki was guessing what Mr. Wright's 'possibl[e]' motivations might be. Nor does Plaintiff's recitation of the conversation suggest that she told Mr. Bulooki any of the details such that he could be in any position to weigh the facts, much less that he was involved in or had any knowledge of any alleged harassment or discrimination or personally engaged in decision-making regarding her employment."); *Burckhartte v. Gen. Motors LLC*, 2021 WL 7442088, at *2 (N.D. Ind. Dec. 6, 2021) ("Arguably, Mr. Coronado and Mr. Eaton may have relevant knowledge of the conditions or the acts performed at the Fort Wayne Assembly Plant—but there is little suggestion that they do given that neither had visited the Fort Wayne Assembly Plant or were directly involved in its management."); *Lee v. City of Chicago*, 2021 WL 2399999, at *4 (N.D. Ill. June 11, 2021) ("Without a showing that Roberts has some unique personal

6

knowledge, the fact that she was made aware of plaintiff's allegations or that she viewed the video of the incident and voiced support for COPA's investigation in a letter to Superintendent Brown is insufficient to warrant her deposition."); *Little*, 2020 WL 868528, at *2 ("The record strongly suggests that Pritzker … does not have unique personal knowledge of the events that plaintiffs allege."); *Nucap Indus. Inc. v. Robert Bosch LLC*, 2017 WL 6059770, at *2 (N.D. Ill. Dec. 7, 2017) ("Bosch GmbH asserts, and Plaintiffs do not dispute, that Denner is not identified as an author, sender or recipient of even a single pre-litigation document of the nearly 3 million pages of documents exchanged thus far. Plaintiffs also do not dispute that no other witnesses have suggested that Denner was involved with, or has knowledge regarding, the central issues in the case.") (cleaned up); *Last Atlantis Cap., LLC v. AGS Specialist Partners*, 2013 WL 4759581, at *4 (N.D. Ill. Sept. 4, 2013) ("Here, there really is no evidence to support the plaintiffs' contention that Mr. Niederauer and Mr. Sternberg possess relevant information, let alone unique or personal knowledge."). That makes all those cases readily distinguishable from this one.

By the same token, other courts have recognized personal participation by the CEO as something of a touchstone when ordering CEOs of even some of the largest companies to sit for a deposition. *See In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 205 F.R.D. at 536 ("Nearly every decision Ford has cited involves an individual personal injury, employment, or contract dispute with which the "apex" official had no personal involvement.") (ordering deposition of the Chairman of the Board of Ford Motor Company). And likewise, courts have not treated the "unique

knowledge" literally or required that parties demonstrate that senior executives know something that no one else possibly knows as a predicate to deposing senior executives. *Id.* (ordering deposition despite "suspect[ing] that Ford's assertion that Mr. Ford has no unique personal knowledge relevant to this litigation is accurate"). The Court will do the same here.

Furthermore, Reith-Riley's attempt to use its 30(b)(6) witness testimony as sufficient to shield Rose from sitting for a deposition fails. The corporate designee did not know whether Rose had any further conversations on the issue with Reith-Riley's board of directors, or whether Rose (or anyone else) read the patents for which ArrMaz was seeking a licensing fee. If the 30(b)(6) witness cannot testify to those facts (and he apparently did not consult with Rose in preparing for the organizational deposition), then it stands to reason that Rose is the only person who would be able to. This further satisfies the "unique knowledge" prong of the apex witness inquiry to the extent it is necessary to show more than personal knowledge.

**B. The Burden on Rose and Other Avenues of Discovery**

Having found that Rose has personal knowledge of issues at the heart of the litigation and that at least some of that is uniquely within his purview, the Court moves on to the next step of the analysis: whether "the information can be collected through less intrusive discovery methods" and whether "the deposition unduly interferes with the officer's professional duties." *In re Deere & Co. Repair Servs. Antitrust Litig.*, 2025 WL 1435061, at *1

Here, ArrMaz has done its due diligence in pursuing this discovery through

8

other less burdensome-means before seeking to depose Rose. It deposed Stine who was arguably the most knowledgeable on the subject (even if not the final decisionmaker) and obtained testimony on behalf of the company from him as a 30(b)(6) witness. Likewise, while the Court is cognizant that as President and CEO of Reith-Riley, Rose has many pressing business matters in his day-to-day professional life that he must attend to so he can fulfill his duties to the company and its owners, no one is categorically too busy or too important to sit for a deposition when they have personal knowledge. *E.g.*, *Clinton v. Jones*, 520 U.S. 681, 704 (1997) (collecting historical examples of Presidents of the United States providing testimony in litigation). Even with his busy schedule, the fact remains that he had time to personally participate in Reith-Riley's decision not to license ArrMaz's patents. Consequently, now that ArrMaz has sued Reith-Riley for willful infringement, he must make time to sit for a deposition on the subject. *See In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*, 2002 WL 32155478, at *2.

All of that said, the Court does not believe that Rose should be subject to a full deposition of seven hours on the record without any constraints whatsoever. That would be unduly burdensome, and in managing discovery district courts have a duty to prevent "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). So the deposition of Rose shall be limited to three hours of on-the-record questioning. Likewise, Rose and Reith-Riley shall be entitled to select the location for Rose's deposition—including by having it taken by remote means if they so choose—and should be entitled to substantial deference in selecting the date for

9

the deposition. And while the Court will not formally restrict the substance of questioning to only certain topics, (*e.g.*, "Reith-Riley's decision to not license the Asserted Patents"), it will have no tolerance for gamesmanship, grandstanding or persistent questioning on matters which are outside Rose's personal knowledge.

Finally, the Court declines to award any reasonable expenses or attorney's fees in connection with the motion because it finds that Reith-Riley's position was substantially justified. Fed. R. Civ. P. 37(a)(5)(A).

## Conclusion

For the reasons discussed, Defendant's Motion for Protective Order [DE 97] is **GRANTED in part** to the extent the Court has limited how the deposition shall proceed but in all other respects is **DENIED.** The Court further **ORDERS** that Rose's deposition be completed no later than **December 9, 2025**.

SO ORDERED this 1st day of October 2025.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT

10