UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ARRMAZ PRODUCTS INC,

    Plaintiff,

    v.

RIETH-RILEY CONSTRUCTION CO INC,

    Defendant.

Case No. 3:23-CV-778-GSL-AZ

## OPINION AND ORDER

This matter is before the Court on Defendant Rieth-Riley Construction Co. Inc.'s ("Rieth-Riley") Motion to Exclude Portions of Plaintiff's Final Infringement Contentions [DE 93], as well as Plaintiff ArrMaz Products, Inc.'s ("ArrMaz) Motion to Exclude Portions of Rieth-Riley's Final Invalidity Contentions [DE 96]. Both Motions were fully briefed, [*see* DE 93–95 (Rieth-Riley's Motion); DE 96, 100, 107 (ArrMaz's Motion)], and oral argument was held on January 22, 2026, to discuss the Motions [DE 135]. Both Motions are now ripe for ruling. For the following reasons, the Court **GRANTS IN PART, DENIES IN PART** Defendant's Motion [DE 93] and **GRANTS IN PART, DENIES IN PART** Plaintiff's Motion [DE 96].

## BACKGROUND

This case concerns a patent infringement suit involving Patent Nos. 7,802,941 ("the '941 Patent") and 8,465,843 ("the '843 Patent") (collectively, the "Asserted Patents"), both of which are directed to surface-paving technology and, together, govern compositions and methods for applying rut resistant and crack resistant asphalt coatings. On August 21, 2023, ArrMaz asserted claims 1–23 of the '941 Patent and claims 1–5 of the '843 Patent against Rieth-Riley, arguing Rieth-Riley either (1) submitted a bid to fulfill certain Indiana Department of Transportation

(INDOT) road paving contracts (regardless of whether it was awarded the contract), or (2) was actually awarded and has fulfilled certain INDOT paving contracts. [DE 93 at 1–2; *see generally* DE 1].

### *Infringement and Invalidity Contentions[1]*

On January 8, 2024, ArrMaz served its Preliminary Infringement Contentions as required by the Northern District of Indiana's Local Patent Rules (L.P.R.). Supplemental Infringement Contentions were subsequently served on November 20, 2024, and again on March 3, 2025. On July 3, 2025, ArrMaz served its Final Infringement Contentions, in which several additions were made in comparison to the preliminary contentions. These additions included: (1) Contract R-40650-A; (2) new infringement theories under the doctrine of equivalents as to claims 1–4 of the '941 Patent and claim 1 of the '843 Patent; (3) general infringement contentions as to claims 11–12 and 19–20 of the '941 Patent; and (4) indirect infringement contentions as to all asserted claims under both patents.

During this same period, Rieth-Riley made several filings with respect to its invalidity contentions. Rieth-Riley served its Preliminary Invalidity Contentions on February 5, 2024, and subsequently served its Supplemental Invalidity Contentions on December 17, 2024, January 28, 2025, and April 23, 2025, respectively. Rieth-Riley served its Final Invalidity Contentions on July 24, 2025, and, like ArrMaz, made various additions. Of the approximately eighteen new contentions or prior art references added to the Final Contentions, these included in relevant part: (1) ArrMaz's Special Project 081 ("SP-081 Project"); (2) the Novabond/NovaChip reference; (3)

---

[1] In addition to the filing of the parties' preliminary and final contentions, a *Markman* claim construction hearing was held on October 15, 2024 [DE 74]. Further, discovery concluded on December 9, 2025, and the parties' dispositive motion deadline passed on January 8, 2026. The parties have since cross-moved for summary judgment on several issues. [DE 123; DE 126].

the 2008 Christina Parkway Project; (4) the 2006 Delaware Project; (5) the Knoll, Keiter, and Kandhal references; and (6) various other prior art references meant to elicit background on the state of the prior art.

### *Motions to Exclude*

Following the filings of the parties' Final Infringement Contentions and Final Invalidity Contentions, both ArrMaz and Rieth-Riley moved to exclude portions of the other's final contentions, with Rieth-Riley filing its Motion on July 17, 2025 [DE 93], ArrMaz's filing its Motion on August 7, 2025 [DE 96]. Both Motions were fully briefed, [*see* DE 93–95 (Rieth-Riley's Motion); DE 96, 100, 107 (ArrMaz's Motion)], and a motion hearing was held on January 22, 2026 [DE 135]. Both Motions are now ripe for ruling.

## LEGAL STANDARD

Because district courts possess the inherent power to manage their own docket, *see Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1321 (Fed. Cir. 2016) (citing *Ryan v. Gonzalez*, 568 U.S. 57, 74 (2013)), they are authorized to "consider and take appropriate action to facilitate the just, speedy, and inexpensive disposition of all matters before them." *Id.* (internal quotation marks omitted) (citing Fed. R. Civ. P. 16; Fed. R. Civ. P. 1). A district court's local patent rules, which "are essentially a series of case management orders," are one such means of assisting the court in accomplishing this task. *Id.* at 1320 (quoting *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015)).

The Federal Circuit has recognized that some local patent rules are intended to serve an objective which "has been difficult to achieve through traditional discovery mechanisms such as contention interrogatories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). These rules are designed specifically to "require parties to crystallize their

theories of the case early in the litigation to prevent the 'shifting sands' approach to claim construction." *See Keranos*, 797 F.3d at 1035 (internal quotations marks omitted) (quoting *Monolithic*, 467 F.3d at 1364); *see also Monolithic*, 467 F.3d at 1365–66 (noting the local patent rules require the parties to provide "early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery"). In serving this purpose, the local rules "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *Monolithic*, 467 F.3d at 1366. Accordingly, where a party fails to abide by the local patent rules, the court is permitted to impose any "just" sanction, including "refusing to allow the disobedient party to support or oppose designed claims or defenses, or prohibiting that party from introducing designated matters in evidence." *Id.* at 1363 (citing Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b)(2)(B)).

The interpretation and application of a district court's local patent rules are reviewed by the Federal Circuit under an abuse of discretion standard. *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1320 (Fed. Cir. 2016) (citing *Monolithic*, 467 F.3d at 1366–67). Decisions enforcing the court's local patent rules will be affirmed unless it is "clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence." *Id.* at 1324 (quoting *Monolithic*, 467 F.3d at 1366–67). This "highly deferential review standard" is provided to the district court's interpretation and enforcement of its local rules "so as not to frustrate local attempts to manage patent cases according to prescribed guidelines." *Id.* (quoting *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002)).

## DISCUSSION

Before diving into the merits of the parties' claims, it is worth noting that both parties, despite expecting strict compliance from their opponent, ran roughshod of the local patent rules and allowed a myriad of divergences from the plain letter of the rules to occur. The Court explicitly pointed this issue out during the hearing on these motions as the parties were preparing to argue for a textualist reading of the rules. [*See* DE 135]. Thus, while the Court is addressing the parties' contentions and their arguments as a matter of courtesy, this courtesy may not be extended to the same extent moving forward. Local Patent Rule 1-1 requires compliance with the rules. The parties are therefore expected to adhere to that in the future.

### I.     Rieth-Riley's Motion to Exclude Portions of ArrMaz's Final Infringement Contentions [DE 93]

Beginning with Rieth-Riley's Motion to Exclude, four amendments to ArrMaz's Final Infringement Contentions were originally at issue: (1) Contract R-40650-A, (2) new doctrine of equivalents theories as to claims 1–4 of the '941 Patent and claim 1 of the '843 Patent, (3) additional general infringement contentions as to claims 11–12 and 19–20 of the '941 Patent, and (4) new indirect infringement theories as to all asserted claims. Rieth-Riley contends that ArrMaz failed to comply with L.P.R. 3-1(b)(2) and (b)(3), and that these amendments fail to comply with L.P.R. 5-1(a)(3). [DE 93 at 4]. During the motion hearing held on January 22, 2026, [DE 135], the parties abandoned their arguments relating to the exclusion of the general and indirect infringement contentions, thereby mooting those portions of Rieth-Riley's Motion.[2]

---

[2] Specifically, the parties' stated during the hearing that ArrMaz withdrew the specific claims listed under its general infringement contentions and, further, that there was no longer any issue pertaining to indirect infringement in the case. [DE 135].

Thus, the Court will instead focus on Contract R-40650-A and the doctrine of equivalents theories raised under each of the Asserted Patents.

### A.  Local Patent Rules (Infringement Contentions)

Early during the litigation, our local patent rules require any party claiming patent infringement to serve upon all other parties its preliminary infringement contentions. L.P.R. 3-1(a). Each contention must include an infringement claim chart for each accused product or process ("accused instrumentality"), and each claim chart must contain the following: (1) the claims of each asserted patent allegedly being infringed by the accused instrumentality; (2) a specific identification of where each claim limitation is found within the accused instrumentality; and (3) whether each limitation of each asserted claim is present in the accused instrumentality either literally or under the doctrine of equivalents. L.P.R. 3-1(b).

Later in the litigation, following claim construction, any party asserting infringement must serve upon all other parties its final infringement contentions. L.P.R. 5-1(a)(1). Local Patent Rule 5-1 explains, however, that a party may not assert at trial any contentions not set out in its final contentions and, further, notes that the final infringement contentions may not identify additional accused instrumentalities not previously contained in the preliminary infringement contentions absent **good cause**. L.P.R. 5-1(a)(2)–(3). Although our local patent rules do not explicitly define what constitutes "good cause," two examples are offered: (a) the discovery of previously undiscovered information or (b) an unanticipated claim construction ruling.[3] L.P.R. 5-1(a)(3). Any party wishing to amend their final infringement contentions "must include a

---

[3] Although undefined by the local patent rules, the issue of what constitutes an "unanticipated claim construction ruling" was recently addressed by the Northern District of Indiana in *Furrion Prop. Holding Ltd. v. Way Interglobal Network, LLC*, 2021 WL 4263757, at *1 (N.D. Ind. Sept. 20, 2021). There, the court explained that "[a]t bottom, whether a claims construction ruling is truly unanticipated, as that term is used in our local rules, will have to be decided on a case-by-case basis with a careful and pragmatic eye on achieving a result that is in the interest of justice." *Id.*

separate statement outlining the specific grounds that it claims constitute good cause for the amendment." *Id.*

Finally, upon receipt of the asserting party's final infringement contentions, any accused infringers may seek to exclude amendments on grounds that good cause does not exist. L.P.R. 5-1(a)(4). Any unopposed amendment will be deemed effective and will be permitted. L.P.R. 5-1(a)(5).

### B. Contract R-40650-A

To begin, Rieth-Riley seeks to exclude from ArrMaz's Final Infringement Contentions Contract R-40650, one of the purported road-paving contracts Rieth-Riley had with INDOT. Rieth-Riley raises a few points as to why this item should be excluded. First, Rieth-Riley argues there is no good cause for the contract's belated inclusion because it was first issued on February 26, 2021, was part of the same information which allowed ArrMaz to confirm its infringement theories for six other INDOT contracts and was publicly available around two-and-a-half years prior to the filing of this suit. [DE 93 at 6–7]. Relatedly, Rieth-Riley argues that ArrMaz has not offered an explanation as to why it could not include Contract R-40650-A in its preliminary contentions which, it contends, constitutes a lack of due diligence and is thus fatal under Local Patent Rule 5-1. [*Id.* at 7]. Finally, Rieth-Riley asserts that its Motion to Exclude is only now procedurally timely and that "notice" of any infringement theories related to Contract R-40650-A is insufficient to rebut undue prejudice to Rieth-Riley because good cause cannot be determined until the time to amend has come. [*Id.* at 7–8].

Concerning Rieth-Riley's first argument, Contract R-40650-A was first publicized on February 26, 2021, with a letting date of March 10, 2021. [*Id.* at 6; DE 93-4 at 27]. In its Final Infringement Contentions, ArrMaz stated it "did not include this contract in its preliminary

infringement contentions because, at the time that ArrMaz's preliminary contentions were served, ArrMaz had not confirmed infringement." [DE 93-4 at 11]. Rieth-Riley argues the failure to confirm infringement prior to serving its preliminary infringement contentions cannot be justified as "good cause." [DE 93 at 6]. Rieth-Riley notes that despite being publicly available around two-and-a-half years prior to this suit, "the same information that allowed ArrMaz to purportedly confirm infringement for six other contracts was also available to ArrMaz for Contract R-40650-A." [*Id.*]. Rieth-Riley further contends that because the contract was publicly available, and thus neither newly discovered during the litigation nor concealed from ArrMaz, ArrMaz's failure to explain the contract's omission from its Preliminary Infringement Contentions underscores a lack of the due diligence necessary to demonstrate good cause. [*Id.* at 7].

Although the Court's local patent rules list the discovery of previously undiscovered information and unanticipated claim construction rulings as grounds for establishing good cause, the Federal Circuit, the Northern District of Indiana, and several other district courts have also recognized that "good cause may be demonstrated when the moving party shows both its diligence in amending its contentions and that the nonmoving party will not suffer undue prejudice." *Furrion Prop.*, 2021 WL 4263757, at *1 (citing *Monolithic*, 467 F.3d at 1364–67 (reviewing Northern District of California local rules)); *cf. Keranos*, 797 F.3d at 1035 (finding the same under the Eastern District of Texas local rules); *CellCast Techs., LLC v. United States*, 152 Fed. Cl. 414, 423 (2021) ("In making the good cause determination, both diligence and prejudice are relevant considerations.") (internal quotation marks omitted). ArrMaz does not directly respond to Rieth-Riley's diligence arguments, does not rebut that Contract R-40650-A was publicly available prior to the initiation of this suit, and does not raise any unanticipated

claim construction arguments related to this contract. Instead, ArrMaz primarily argues that, should the Court apply the local patent rules strictly to this infringement contention, then its exclusion would be proper as a matter of fairness—provided that the publicly available prior art references raised by Rieth-Riley be similarly excluded. [DE 94 at 3–4]. But as Rieth-Riley notes in its reply [*see* DE 95 at 2], the propriety of Rieth-Riley's invalidity contentions—a matter that will be addressed separately under ArrMaz's Motion to Exclude—is irrelevant to whether good cause is present to support this contract's inclusion.

Moreover, although ArrMaz does not raise a specific statement outlining good cause and undue prejudice in the Final Infringement Contentions, as required by Local Patent Rule 5-1(a)(3), it does briefly argue that Rieth-Riley cannot be unduly prejudiced by Contract R-40650-A's inclusion because it requires no changes to Rieth-Riley's noninfringement contentions, does not require any additional claim construction, and the theory of infringement underlying the contract is identical to that asserted for other contracts not being contested by Rieth-Riley.[4] [DE 94 at 4]. Rieth-Riley argues that any "notice" it would have had through the contract's inclusion in ArrMaz's November 2024 Supplemental Infringement Contentions cannot be determined until after service of ArrMaz's Final Infringement Contentions. [DE 93 at 8]. Similarly, Rieth-Riley asserts that, according to Local Patent Rule 5-1(a)(5), a challenge to the contract's inclusion can

---

[4] During the motion hearing, ArrMaz acknowledges that because the underlying theory of infringement for Contract R-40650-A is the same as the other asserted contracts, the only impact of this contract's inclusion or omission would go to the ultimate monetary value of damages. [*See* DE 135]. Rieth-Riley argues the prejudice behind this contract would similarly concern damages. [*Id.*]. ArrMaz, however, argues that a determination of prejudice does not concern what happens at the end of the case, but instead concerns what the impact to the party is during discovery. While the Federal Circuit, in reviewing other district courts' local patent rules, has found prejudice when the effect of an amendment's inclusion would either reopen claim construction or extend discovery, the Northern District of Indiana in *Furrion* appears to have found prejudice where the amendment would require reconducting certain discovery and where the potential damage exposure in doing so is expanded. *See Furrion*, 2021 WL 4263757, at *4. The situation here does not appear to involve an increase to discovery expenses, but rather liability expenses. The Court is inclined to agree with ArrMaz that prejudice is less concerned with the ultimate impact to liability where brand new theories have not been introduced, such as here. Thus, there is likely no prejudice on this basis.

only be made following service of the final contentions, and thus its challenge at this point is both timely and proper. [*Id.* at 7]. To this end, Rieth-Riley argues that it is nonetheless unduly prejudiced because a contention's inclusion in a supplemental contention filing does not indicate that it will be designated as final and, further, the failure to explain good cause for its inclusion undermines any notice it may have allegedly had. [*Id.*].

Based on all these reasons, the Court agrees with Rieth-Riley that ArrMaz has not established good cause for Contract R-40650-A's inclusion in the Final Infringement Contentions, particularly on the lack of diligence on ArrMaz's part. Therefore, Contract R-40650-A should be excluded from ArrMaz's Final Infringement Contentions.

### C.  Doctrine of Equivalents Theories

Moving on to the next item of Rieth-Riley's Motion to Exclude, Rieth-Riley seeks to remove the doctrine of equivalents theories raised under both Asserted Patents.

As with Contract R-40650-A, Rieth-Riley raises numerous arguments in support of excluding ArrMaz's doctrine of equivalents theories. First, Rieth-Riley argues that under Local Patent Rule 3-1(b)(3), ArrMaz was required to identify any theories of infringement, whether literal or through the doctrine of equivalents, in its Preliminary Infringement Contentions. [*Id.* at 9]. Relying on *Lippert Components Manufacturing, Inc. v. MOR/ryde International, Inc.*, Rieth-Riley argues that timely disclosure of such theories is necessary to avoid undue prejudice because "[w]ithout timely disclosure in compliance with the Local Patent Rules and this Court's Scheduling Order, [a party] is left blind as to the full range of allegations against it," a result directly "contrary to the goal of early disclosure the Local Patent Rules seek to achieve." 2016 WL 11818536, at *4 (N.D.  Ind. May 26, 2016), *objections overruled*, 2017 WL 4771010 (N.D. Ind. Feb. 23, 2017). Rieth-Riley similarly argues that ArrMaz cannot rely on the discovery of

new information or unfavorable claim construction rulings to show diligence and good cause in amending the final contentions. Rieth-Riley contends, as with Contract R-40650-A, that ArrMaz's doctrine of equivalents theories are based on publicly available information—INDOT road paving contracts searchable by contract number, item number, and vendor—which would have set out the necessary specifications and requirements necessary to formulate these theories in ArrMaz's Preliminary Infringement Contentions. [DE 93 at 11]. Finally, Rieth-Riley asserts that a blanket recitation of its reservation of rights is an insufficient basis for expanding these theories at this time. [*Id.* at 9–10 and n. 1 (listing cases)]. *See Days Corp. v. Lippert Components, Inc.*, 2019 WL 6876634, at *2 (N.D. Ind. Dec. 17, 2019) (quoting *Morpho Trust USA, LLC v. United States*, 132 Fed. Cl. 419, 421 (2017) (noting that "self-serving language cannot possibly modify the legal standard of 'good cause' imposed by the local patent rules" because "[i]t would be intolerable to case management if one party could simply reserve to itself the right to change its substantive positions without cause").

In response, ArrMaz argues the facts supporting the assertion of the doctrine of equivalents theories, which are directed toward Rieth-Riley's spray pavers and their disposition rates, were not publicly available to ArrMaz at the time of filing its Preliminary Infringement Contentions and were known only to Rieth-Riley. [DE 94 at 5–6]. ArrMaz states that "[d]espite [its] consistent efforts, since day one, to obtain that information through legitimate discovery demands, Rieth-Riley has either refused to produce, or delayed the production of that relevant information," effectively stonewalling ArrMaz. [*Id.*]. On this basis, ArrMaz contends that Rieth-Riley has created its own deficient discovery responses and "should not be allowed to strike a legitimate, previously disclosed infringement theory—and avoid a finding of infringement—by delay or refusal to provide the information that only it possesses." [*Id.*].

While a determination of patent infringement is principally made by examining whether the accused subject matter falls within a patent claim's scope as literally written, *see Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1330 (Fed. Cir. 2019), "[t]he doctrine of equivalents provides a limited exception to the principle that claim meaning defines the scope of the exclusivity right in our patent system." *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, 119 F.4th 1355, 1370 (Fed. Cir. 2024) (quoting *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1341 (Fed. Cir. 2023)). Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Id.* (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997)). This may be demonstrated in one of two ways, both of which strike the same "essential inquiry." *Id.* (quoting *Warner-Jenkinson*, 520 U.S. at 40). The first method, referred to as the "function-way-result" test, asks "whether the accused product performs substantially the same function in substantially the same way to obtain the same result." *Id.* (internal quotation marks omitted). The second method asks whether "differences between the claimed invention and the accused device or process are 'insubstantial.'" *Id.*

Regardless of which test is applied, both the Federal Circuit and the Supreme Court have made clear that courts should avoid an overbroad application of the doctrine of equivalents and that proof under the doctrine of equivalents must be made on a limitation-by-limitation basis. *See id.* at 1370–1371 (quoting *Warner-Jenkinson*, 520 U.S. at 21) ("This requirement means that equivalency is determined by comparing 'the elements of the accused product or process and the claimed elements of the patented invention.'"). In this regard, it is similarly understood that "evidence of equivalents must be from the perspective of someone skilled in the art, for example

12

through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art." *Id.* at 1371 (quoting *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1329 (Fed. Cir. 2007)). Finally, the patentee is required to provide "particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device," that is, a "'meaningful explanation of why' the element or elements from the accused product or process are equivalent to the claimed limitation." *Id.* (quoting *VLSI*, 87 F.4th at 1344).

       *1. Due Diligence*

With the above standard and burden of proof in mind, ArrMaz asserts it sought various sources of information from Rieth-Riley as to its spray paver speeds when disposing the accused coating. [DE 94 at 6]. ArrMaz explains it first sought, between January 2024 and June 2025, "[d]ocuments . . . specifications, and photos reflecting . . . the operating speed of the spray paver [that Rieth-Riley] used"; "[d]ocuments sufficient to show the actual and intended travel speed of the spray paver when disposing the emulsion, Hot Mix Asphalt, or Stone Matrix Asphalt"; and "[d]ocuments (including electronically stored information) sufficient to show any speed of any spray paver while disposing any Emulsion, Hot Mix Asphalt, or Stone Mix Asphalt for any Awarded Contract." [DE 94 at 6 (quoting DE 94-3 to 94-5). Next, ArrMaz argues that, in addition to not producing any requested documents, Rieth-Riley would not provide a direct response to ArrMaz's January 2024 interrogatory seeking all of Rieth-Riley's noninfringement defenses until sixteen months later in May 2025. [*Id.* at 7 (citing DE 94-6 to 94-7)]. Even then, however, Rieth-Riley purportedly would not disclose the actual sprayer speed and only stated that, in its view, infringement required a disposition rate above thirty-six feet per minute, which was faster than its sprayer was capable of. [*Id.* (citing DE 94-7 at 5–6, 7–11)].

In June 2025, ArrMaz served an interrogatory seeking "the speed or speeds at which any spray paver was operated" to dispose the accused asphalt coatings and to identify "three employees of Rieth-Riley who are most knowledgeable as to the factual bases for this contention." [*Id.* (quoting DE 94-8)]. According to ArrMaz, Rieth-Riley answered the interrogatory request in part by providing the requested employees' names but stated that "it does not have a policy of recording the operating speed of its spray pavers" and that it "did not operate its spray paver continuously at a rate of 36 ft/min or greater for any work performed on the Awarded Contracts." [*Id.* (quoting 94-9)]. Finally, ArrMaz contends it requested, to no avail, both a meet and confer and personal and corporate depositions from Rieth-Riley since at least June 2025. [*Id.* at 8].

In addition to its discovery requests, ArrMaz stated the following for claim 1.B of the '941 Patent in its Final Infringement Contentions:

> Compliance with each of the Contracts requires a spray paver that applies the aggregate mixture (HMA) and the asphalt emulsion (binding material layer) simultaneously, and the spray paver utilized for each of the Contracts disposes the aggregate mixture of the aggregate mixture layer in a period of time less than about 30 seconds. . . . To the extent this limitation is not deemed literally met by compliance with each of the Contracts, along with its associated Road Plans, this limitation would be met under the doctrine of equivalents because any difference would be insubstantial and thus substantially equivalent. . . . **Rieth-Riley's noninfringement contentions** set forth in their First Supplemental Answer to ArrMaz's Interrogatory No. 7, served May 30, 2025, **did not include a time that the aggregate mixture of the aggregate mixture layer is disposed on the binding material layer, rendering a doctrine of equivalents analysis premature**.

[DE 93-4, Ex. A. at 31–32 (emphasis added)].

Similarly, for claims 2 through 4, ArrMaz stated the following:

> Rieth-Riley has contended no literal infringement of [claims 2–4] but **has not yet responded to ArrMaz's discovery requests as to the relevant time limitation. Without this information, ArrMaz is not in a position to evaluate the doctrine of equivalents** but reserves its right to do so if and when Rieth-Riley responds.

[*Id.*, Ex. A at 39 (emphasis added)].

Finally, for claim 1 of the '843 Patent, ArrMaz explained:

Each Contract requires a spray paver that applies the aggregate mixture layer (HMA) and the asphalt emulsion (binding material layer) simultaneously. The first aggregate mixture layer is disposed on the first binding material layer within fifteen seconds of the first binding material layer being disposed on the surface. . . . Rieth-Riley has contended no literal infringement of this claim **but has not yet responded to ArrMaz's discovery requests as to the relevant time limitation. Without this information, ArrMaz is not in a position to evaluate the doctrine of equivalents** but reserves its to do so if and when Rieth-Riley responds.

[*Id.*, Ex. B at 5 (emphasis added)].

Rieth-Riley argues that despite ArrMaz's discovery requests, it still could have raised these arguments because the purpose of the doctrine of equivalents is that the patentee lacks detailed information yet still reasonably believes an accused product is substantially similar in function and result to the accused product. [DE 95 at 4]. Rieth-Riley further argues that ArrMaz could have identified facts sufficient to form the basis of the doctrine of equivalents through published manufacturer specifications for common models, technical manuals, marketing brochures, and trade publications, all of which routinely discuss paver performance metrics. [*Id.*]. In addition, Rieth-Riley states that it disclosed the owner's manual to the spray paver it uses, which lists both the minimum and maximum operating speeds. [*Id.*]. Finally, for claims 2 through 4 of the '941 Patent, Rieth-Riley explains that because these dependent claims narrow the scope of independent claim 1 by reducing the allowable time (*e.g.*, twenty, fifteen, or five seconds) between the application of a binding layer and an aggregate layer, ArrMaz knew from the outset that the sprayer speed was central to any viable infringement theory. [*Id.* at 6].

There are a few points worth expanding upon as to both parties' arguments. First, Rieth-Riley is correct that a blanket reservation of rights is insufficient to satisfy the intended purpose

of the local patent rules. *See Days Corp.*, 2019 WL 6876634, at *2. Furthermore, Rieth-Riley is also likely correct in its assertion that general publications, such as technical manuals, trade brochures, and published manufacturer specifications, could be used as a basis for identifying an infringement theory. Though, and as explained above, a doctrine of equivalents analysis requires a narrow limitation-by-limitation comparison between the *accused product* and the *patented invention*. *See NexStep*, 119 F.4th at 1370–1371 (quoting *Warner-Jenkinson*, 520 U.S. at 21). Thus, the particular specifications of Rieth-Riley's spray paver, including actual data related to its operation and usage, are certainly an appropriate and perhaps more accurate point of comparison to rely on. And based on what has been offered to the Court, this is exactly what ArrMaz appears to have repeatedly sought out, not just overnight, but over a period of around sixteen months.

Second, and relatedly, although Rieth-Riley may have disclosed the owner's manual to its spray paver with both the maximum and minimum spray speeds, which again could be used to a general degree, ArrMaz's quest to obtain *specific data points* regarding Rieth-Riley's spray pavers nonetheless appears to fall in line with the type of particularized linking comparisons the Federal Circuit and Supreme Court intended be relied on for purposes of a doctrine of equivalents analysis. *See id.* at 1371. Finally, ArrMaz listed both the information it requested, but failed to receive, as well as the basis for its doctrine of equivalents theories in its Final Infringement Contentions as required by Local Patent Rule 5-1(a)(3). This, along with the fact that Rieth-Riley was apparently aware that ArrMaz was intending to pursue infringement under the doctrine of equivalents given its responses to ArrMaz's discovery requests, suggests that the local patent rules' purpose of providing the opposing party with notice of any infringement contentions was met.

Thus, based on ArrMaz's persistence in pursuing its discovery requests related to Rieth-Riley's spray paver specifications, as well as the above statements in its Final Infringement Contentions, ArrMaz has demonstrated a sufficient degree of diligence in pursuing its doctrine of equivalents theories.

### 2. *Undue Prejudice*

Rieth-Riley contends that new infringement theories raised at an advanced stage of the litigation, such as this, should be rejected because they are highly prejudicial. [DE 93 at 10]. Specifically, Rieth-Riley asserts that ArrMaz's doctrine of equivalents theories materially expand the scope of the case by raising new factual and legal issues Rieth-Riley has not yet had an opportunity to investigate. [DE 93 at 11]. At the time Rieth-Riley filed its Motion to Exclude in July 2025, fact discovery was nearly complete with the deadline occurring in September 2025. Since then, all discovery, including expert discovery, has concluded. [*See* DE 89 (Court's Rule 16(b) Scheduling Order)]. In addition, Rieth-Riley asserts that the burden of crystallizing any infringement theories was on ArrMaz and ArrMaz alone, and thus any disputes concerning what was disclosed during discovery are irrelevant. [DE 5 at 7].

In contrast, ArrMaz argues that the doctrine of equivalents theories do not materially expand the scope of the case because Rieth-Riley knew that ArrMaz could have, and in fact intended to, raise its doctrine of equivalents theories both through its reservation of rights and through its persistent discovery requests. [DE 94 at 10]. Further, ArrMaz notes that Rieth-Riley does not expound upon what factual or legal issues are raised and explains that Rieth-Riley had ample opportunity to investigate these theories during discovery. [*Id.*]. ArrMaz also asserts that it only learned on May 30, 2025—approximately sixteen months after first inquiring—that Rieth-Riley contended that the spray paver's speed was a basis for noninfringement. [*Id.*].

17

As stated before, a reservation of rights, by itself, is not sufficient to satisfy the notice requirement underlying the Court's local patent rules. Despite this, however, it is clear to the Court that ArrMaz's persistent discovery requests over an approximate sixteen-month period regarding the spray paver's speed should have provided Rieth-Riley with enough notice that ArrMaz would raise a doctrine of equivalents theory as to one or more claims. This is only further supported when considering that Rieth-Riley waited until the end of May 2025 to notify ArrMaz that it would be relying on the spray paver's speed as a basis for noninfringement. Whatever the reason for the timing of this decision, it seems plausible that Rieth-Riley was aware ahead of time that a doctrine of equivalents theory could be invoked. Moreover, because expert discovery had not yet commenced during the filing of Rieth-Riley's Motion to Exclude, and because document requests potentially *could have* been addressed months prior, it seems that Rieth-Riley was not as pinned against the wall of the discovery deadline as it claims it was.

Therefore, because Rieth-Riley could have addressed ArrMaz's discovery requests at an earlier time and because it does not appear that these theories materially expand the scope of the case beyond what was already hashed out in discovery, the Court does not find that Rieth-Riley will be unduly prejudiced by the inclusion of the doctrine of equivalents theories. Accordingly, ArrMaz has demonstrated good cause for amending its Final Infringement Contentions to include these theories.

### D.  Conclusion

ArrMaz has not demonstrated good cause for including Contract R-40650-A in its Final Infringement Contentions, and thus this contention will be excluded. But because ArrMaz has demonstrated good cause for the inclusion of its doctrine of equivalents theories, those contentions may remain. Finally, because the parties agreed to withdraw the claims and

arguments concerning ArrMaz's general and indirect infringement contentions under each of the Asserted Patents, those issues are deemed moot.

## II.    ArrMaz's Motion to Exclude Portions of Rieth-Riley's Final Invalidity Contentions [DE 96]

Moving on to ArrMaz's Motion to Exclude, various amendments to Rieth-Riley's Final Invalidity Contentions are at issue. These amendments include the following: (1) the SP-081 Project; (2) the Novabond/NovaChip reference; (3) the 2008 Christina Parkway Project; (4) the 2006 Delaware Project; (5) the Knoll, Keiter, and Kandhal References; and (6) Reference Nos. 49–54 [DE 96 at 20].

### A.  Local Patent Rules (Invalidity Contentions)

Much like the Court's rules regarding infringement contentions, the process for serving preliminary and final invalidity contentions works in generally the same fashion, albeit with different requirements. For example, upon receipt of the asserting party's preliminary infringement contentions, each party opposing a patent-infringement claim must serve its preliminary invalidity contentions, which must include a chart (or charts) identifying each allegedly invalid claim as well as each item of prior art that either anticipates the claim or renders it obvious. L.P.R. 3-1(e). The claim charts must contain the following contentions: (1) how and under what statutory basis the item qualifies as prior art; (2) whether the prior art item anticipates or renders each allegedly invalid claim obvious; (3) a specific identification of where in the prior art item each limitation of each allegedly invalid claim is found; (4) why, if obviousness is alleged, the prior art renders the allegedly invalid claims obvious, including why combining the identified items of prior art demonstrate obviousness and why a person of skill in the art would find the allegedly invalid claim obvious in light of such combinations (*e.g.,* reasons for combining the references); and (5) a statement identifying with specificity any other asserted

grounds for invalidity of any allegedly invalid claims, including contentions raised under 35 U.S.C. §§ 101, 112, or 251. L.P.R. 3-1(e)(1)–5).

Similarly, following claim construction, each accused infringer must serve on all other parties its final invalidity contentions. L.P.R. 5-1(b)(1). Because no invalidity contentions not contained in the final list of contentions may be presented at trial, each party's final invalidity contentions must contain the final statement as to all contentions. L.P.R. 5-1(b)(2). If a party's final invalidity contentions identify any additional prior art, the amendment must be supported by good cause and the accused infringer must include "a separate statement providing the specific grounds establishing good cause for the amendment." L.P.R. 5-1(b)(3). The party asserting infringement may seek to exclude the amendment on grounds that good cause is nonexistent. L.P.R. 5-1(b)(4). Finally, any unopposed amendments will be deemed effective. L.P.R. 5-1(b)(6).

### B. SP-081 Project, 2008 Christina Parkway Project, 2006 Delaware Project, and Novabond/NovaChip Reference ("Pre-filing Activities")

The first group of invalidity contentions ArrMaz seeks to exclude include (1) the SP-081 Project, (2) the 2008 Christina Parkway Project, (3) the 2006 Delaware Project, and (4) the Novabond/NovaChip reference. These contentions are collectively referred to as the "pre-filing activities in both ArrMaz's Motion and Rieth-Riley's Final Invalidity Contentions. [*See* DE 96 at 2; DE 96-2 at 10–21]. ArrMaz raises several arguments addressing one or more of the pre-filing activities. The Court will address each set of arguments in tow.

#### 1. *Claim Charts and Specifications*

The first exclusion argument ArrMaz raises is that Rieth-Riley violated Local Patent Rule 3-1(e) by failing to provide claim charts for, or specify which asserted claims are rendered invalid by, the SP-081 Project, the 2008 Christina Parkway Project and the Novabond/NovaChip

reference. [DE 96 at 5]. ArrMaz further argues that Rieth-Riley failed to identify where each limitation in the allegedly invalid claim(s) is found in each of these references. [*Id.* at 6]. ArrMaz contends that the failure to provide the necessary charts and information, including how any of these references render the Asserted Patents anticipated or obvious, hinders ArrMaz's ability to assess how the references compare to the asserted claims or whether the comparison complies with the Court's claim construction rulings.[5] [*Id.*]. This, ArrMaz argues, directly results in the "shifting-sands" issue the Federal Circuit expressly warned about when discussing noncompliance with the local patent rules. [*Id.* at 7 (citing *Monolithic*, 467 F.3d at 1364)].

In response, Rieth-Riley argues that its failure to provide traditional-style charts is an inadequate basis for exclusion because Local Patent Rule 3-1(e) describes the "content" of what is to be included in the preliminary infringement contentions to provide sufficient notice of what invalidity theories are being advanced. [DE 100 at 2–3]. In other words, Rieth-Riley asserts that it is the substance of the required information, and not its format, which provides notice.[6] [*Id.* at 3 and n.2]. To this end, Rieth-Riley argues that all the necessary information required under Local Patent Rule 3-1(e) is present, albeit in its Final Invalidity Contentions. [*Id.* at 3].

To begin, Rieth-Riley contends that it complied with Local Patent Rule 3-1(e)(1), which requires describing "[h]ow and under what statutory section the item qualifies as prior art," by labeling each of the asserted references as prior public uses "[u]nder 35 U.S.C. § 102(b) (pre-

---

[5] In a footnote, ArrMaz points out that Rieth-Riley "vaguely refers to '35 U.S.C. § 102(b)' in the relevant section of its invalidity contentions and therefore may be alleging anticipation only as to [the SP-081 Project, 2008 Christina Parkway Project, and the Novabond/NovaChip reference.]" [DE 96 at 6 n.6 (citing DE 96-2 at 10)]. ArrMaz goes on, however, to explain that Rieth-Riley does appear to be alleging obviousness as to the Novabond/NovaChip reference [*id.* (citing DE 96-2 at 16)], and thus Rieth-Riley's ultimate theory of invalidity as to these three references is unclear. [*Id.*].

[6] Rieth-Riley notes that while traditional charts were not provided for each asserted invalidity contention, charts were provided for printed publications constituting prior art under §§ 102 and 103. [*See* DE 100 at n.3; DE 96-2, App. A at 2–8; *see generally* Apps. B–C].

AIA).” [*Id.* at 4 (quoting DE 96-2 at 10–11)]. In fact, Rieth-Riley notes the anticipating nature of the SP-081 Project, the 2008 Christina Parkway Project, and the 2006 Delaware Project (which ArrMaz does not appear to be contesting under this argument) under § 102(b) [*see* DE 96-2 at 11–21], and describes the Novabond/NovaChip reference’s qualification as prior art under §§ 102(b) and 103 in Appendix B [*see id.*, App. B at 44–116].

Next, under Local Patent Rule 3-1(e)(2), Rieth-Riley describes “[w]hether the prior-art item anticipates or renders each allegedly invalid claim obvious” by stating that, with respect to the SP-081 Project and the Novabond/NovaChip reference, “[n]umerous charts included in Appendix B confirm that the claims of the 941 Patent are fully anticipated and/or rendered obvious based on these known applications of NovaChip as references above.” [DE 100 at 4 (quoting DE 96-2 at 17 n.3)]. Similarly, for the ’843 Patent, Rieth-Riley explains that “[t]he Chirstina Parkway Project also anticipates the Asserted Claims of the 843 Patent and describes applying two single lifts of NovaChip (known prior art to the 843 Patent) as set forth throughout Appendix B, which is incorporated herein by reference.” [*Id.* (quoting DE 96-2 at 509)]. Finally, toward the end of the “Pre-filing activities” section in the Final Infringement Contentions, Rieth-Riley explained that “[w]ith the understanding that NovaChip is prior art to the Asserted Patents, the purported inventions claimed in the 941 Patent and the 843 Patent were on-sale and in public use more than one year before the filing date of the application for the 941 Patent and the 843 Patent.” [DE 96-2 at 21].

Next, under Local Patent Rule 3-1(e)(3), which requires “[a] specific identification of where in the prior-art item each limitation of each allegedly invalid claim is found,” Rieth-Riley asserts it specified this information by describing the SP-081 Project, the 2008 Christina Parkway Project, and the Novabond/NovaChip reference as anticipating public prior uses of

claims 1 through 23 of the '941 Patent. [DE 100 at 5]. First, Rieth-Riley states that ArrMaz designated the SP-081 Project and the 2008 Christina Parkway Project as materials demonstrating "conception," and thus embodiments of the claimed invention. [*Id.* (citing DE 100-1 at 7)]. Conception, which has been described as "the formation in the mind of the inventor[] of a definite and permanent idea of the complete and operative invention," must "encompass all limitations of the claimed invention" and is only complete "when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000). On this basis, Rieth-Riley asserts that ArrMaz possessed sufficient information upfront to support the filing of a patent application and to disclose publicly how to make and use the claimed inventions. [DE 100 at 6]. Accordingly, ArrMaz cannot contend a lack of notice as to these materials after the fact. [*Id.*].

But beyond Rieth-Riley's assertion of ArrMaz's familiarity with some or all of the pre-filing activities, Rieth-Riley also contends it extensively charted the relevant aspects of the Novabond/NovaChip reference, both in terms of obviousness and anticipation, and examined the anticipating nature of the other pre-filing activities purportedly serving as applications of Novabond/NovaChip technology. [*Id.*].

Regarding the Novabond/NovaChip reference, Rieth-Riley states it charted the Bense reference (U.S. Patent No. 5,069,578), the patent directed to NovaChip, and either observed the Bense reference alone, in view of, or in combination with one or more references.[7] [*Id.* (citing

---

[7] It appears to the Court that because Rieth-Riley is only asserting obviousness as to the Novabond/NovaChip reference, Local Patent Rule 3-1(e)(4) would only be applicable to this reference. And although Rieth-Riley does not explicitly address subsection (4), it seems Rieth-Riley's charting of this reference under Claim Charts B-3 would go to compliance with this requirement.

DE 96-2, App. B at 28–56 (Claim Chart B-3))]. Similarly, the 1997 Louisiana Report, the 1999 Pennsylvania Report, and the 2006 Delaware Project were each charted as applications of the Novabond/NovaChip reference to reflect that NovaChip was placed in a manner that anticipates the '941 Patent. [*Id.* (citing DE 96-2, App. B at 250–316 (Claim Chart B-8), 317–401 (Claim Chart B-9))]. Rieth-Riley argues the application of Novabond/NovaChip technology was done repeatedly prior to the filing of the application for the '941 Patent, the pre-filing activities are more evidence of the same, and that ArrMaz used data from the pre-filing activities to obtain the Asserted Patents. [*Id.* (citing DE 96-2 at 17)].

Moreover, Rieth-Riley asserts it provided specific information showing how the Novabond/NovaChip reference practices the asserted claims of the '941 Patent. Specifically, Rieth-Riley listed the following information: (1) ArrMaz's representation that the Asserted Patents cover BondTekk technology and that according to ArrMaz, the Asserted Patents are specifically directed to "applying a higher rate of tack (commonly achieved by using a spray paver) with dense graded mixes"; (2) a side-by-side comparison of Novabond/NovaChip to BondTekk explaining that each is "applied using identical equipment/spray paving technology"; (3) an explanation that the "application spray rates are virtually identical (0.13–0.27 gal/sq.yd. (NovaChip) and 0.12–0.25 gal/sq.yd. (BondTekk[]))"; (4) an explanation that despite the purported "differences in lift thickness (<1" thick (NovaChip) vs. 1–2" thick (BondTekk[])" listed in the BondTekk Brochure, Novabond/NovaChip "was placed as thick as 1 ½ inches" well before the filing the '941 Patent; and (5) a statement that Novabond/NovaChip was tied to the SP-081 Project. [*Id.* at 9–10 (quoting and citing DE 96-2 at 15–17)].

Next, as to the SP-081 Project, Rieth-Riley asserts it detailed the following: (1) the claims of the '941 Patent are directed to a "rut resistant coating" that includes "a binding material layer"

and "an aggregate mixture layer"; (2) the invention covered by the '941 Patent amounts to

nothing more than an application of a single lift of Novabond/NovaChip technology, which was

known prior art to the Asserted Patents; (3) the data shown in documents referencing the SP-081

Project is identical to the only purported data provided in the '941 Patent, which allegedly

supports the asserted claims; (4) the data referenced in the '941 Patent was generated more than

one year prior to the '941 Patent's filing data on April 28, 2008; (5) the March 2007 Hamburg

Wheel Tracking Test and bond-strength testing is tied to specific prior art technology—

Novabond—which is not mentioned in the '941 Patent; (6) the tests conducted as part of the

SP-081 Project were in public use and ready for patenting[8] more than one year prior to the filing

of the application for the '941 Patent; and (7) the uniformity between the data generated in the

SP-081 Project and the data presented in the '941 Patent. [*Id.* at 7–10 (citing and quoting DE 96-

2 at 12–15)].

As to the 2008 Christina Parkway Project, Rieth-Riley states that it provided the

following information: (1) that the claims of the '843 Patent are directed to "a first binding

material layer," "a first aggregate mixture layer disposed on the first binding material layer," "a

second binding material layer disposed on the first aggregate mixture layer," and " a second

aggregate mixture layer disposed on the second binding material layer," all of which is

commonly referred to as "two lifts" or a "double lift" and is paired with a timing requirement

that arguably requires placement with a spray paver; (2) the '843 Patent concedes that "any

---

[8] For purposes of determining the critical date for whether the on-sale or prior public use bar has been triggered under 35 U.S.C. § 102(b) (pre-AIA), the Supreme Court developed the so-called "ready for patenting" test in *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67–68 (1998). "An invention is 'ready for patenting' when prior to the critical date: (1) the invention is reduced to practice; or (2) the invention is depicted in drawings or described in writings of sufficient nature to enable a person of ordinary skill in the art to practice the invention." *Hamilton Beach Brands, Inc. v. Sunbeam Prods.*, 726 F.3d 1370, 1375 (Fed. Cir. 2013). "Reduction to practice" requires a showing that "the inventor (1) constructed an embodiment or performed a process that met all the limitations and (2) determined that the invention would work for its intended purpose." *Barry v. Medtronic*, 914 F.3d 1310, 1322 (Fed. Cir. 2019).

embodiment of the crack resistant coating described herein can be mixed, transported, applied, and compacted using standard surface coating equipment know[n] to one of ordinary skill in the art, such as that described in U.S. Pat. No. 5,069,578[9] and French Pat. No. 2,550,248"; (3) the '843 Patent claims a double lift of Novabond/NovaChip technology; (4) the asserted invention claimed by the '843 Patent was on-sale and in public use more than one year before its earliest priority date and that the '843 Patent's subject matter amounts to nothing more than the application of a double lift of Novabond/NovaChip technology; (5) the 2008 Christina Parkway Project included a double lift of Novabond/NovaChip technology and was itself motivated by a prior double lift project designed by the Delaware Department of Technology ("DelDOT") in 2006; (6) the 2008 Christina Parkway Project took place in September 2008; (7) the 2008 Christina Parkway Project used a double lift spray paver constructed bonded overlay system consisting of two lifts of Novabond/NovaChip technology, as described in the Ahmed dissertation;[10] and (8) the 2008 Chrstina Parkway Project falls within the parameters of the '843

---

[9] As Rieth-Riley notes, and as was discussed previously, Patent No. 5,069,578 is the Bense reference, which is directed to Novabond/NovaChip technology. [DE 100 at 11].

[10] In its Final Invalidity Contentions, Rieth-Riley identifies a dissertation by Sarfraz Ahmed which explains that the 2006 Delaware Project served as an express motivation for a subsequent double lift spray paving job, later identified as the 2008 Christina Parkway Project. [DE 96-2 at 19]. According to the dissertation, the 2008 Christina Parkway Project was described as follows:

This project introduced **_double lift spray paver_** constructed bonded overlay system. The pre-overlay condition of the Christina Parkway necessitated the use of a highly crack resistant treatment. **_DelDOT's earlier experience of using 37 mm (1 1/2 inch) Novachip bonded wearing course (BWC) with 50 mm (2 inch) Superpave overlay in 2006 on a project on SR-1 south of Wilmington provided motivation for the system developed for the new rehabilitation._** The double lift treatment on SR-1 was intended to waterproof the existing alkali-silica reaction (ASR) affected PCC pavement and to delay/prevent its further deterioration. Previous attempts of placing traditional 90 mm (3 ½ inch) thick HMA over PCC resulted in failures in 1 year or less on SR-1. **_Considering the performance of double lift overlay system on ASR affected SR-1 pavement, another experimental project was designed and constructed on Christina Parkway/SR-2/SR-4 in September 2008_**.

[_Id._ at 19–20 (emphases in original)].

Patent's claimed subject matter, yet constitutes nothing more than an application of two single lifts of Novabond/NovaChip technology.[11] [*Id.* at 11–12 (quoting DE 96-2 at 19–21)].

Based on the totality of the parties' arguments, the Court agrees with Rieth-Riley that sufficient information was disclosed to, at the very least, show adequate compliance with Local Patent Rule 3-1(e). Rieth-Riley did not provide an explicit limitation-by-limitation, claim-by-claim identification of how the pre-filing activities invalidate the asserted claims, which arguably would have been preferential under the local patent rules, reduced the number of arguments raised, and simplified the Court's analysis. The purportedly anticipating nature of the pre-filing activities—which Rieth-Riley appears to have asserted as the sole ground for invalidity as to most of the pre-filing activities—may have rendered such an exercise rather voluminous. This is because anticipation inherently requires a prior art reference meeting the entirety of a claim's limitations. *See Arbutus Biopharma Corp. v. ModernaTX, Inc.*, 65 F.4th 656, 662 (Fed. Cir. 2023) ("A claim is anticipated if each and every element as set forth in the claim is found, either expressly or inherently, in a single prior art reference."). As discussed above, Rieth-Riley detailed how the pre-filing activities appear to meet the limitations of the asserted claims in both Asserted Patents. Further, Rieth-Riley disclosed relevant data relating to the pre-filing activities which appear to go to the values and ranges identified in various dependent claims under both Asserted Patents. This appears sufficient under the local patent rules to give ArrMaz an adequate basis for how Rieth-Riley intends to assert these contentions.

It should be noted, however, that Local Patent Rule 3-1(e) requires disclosure of this information in the *preliminary invalidity contentions*, not the final invalidity contentions. The

---

[11] Additional discovery-based arguments related to the 2008 Christina Parkway Project and other Novabond/NovaChip double lift jobs were raised by Rieth-Riley in its response under seal. [DE 100 at 12; *see* DE 101–03].

Court finds adequate compliance with this rule solely on the basis that Rieth-Riley appears to have extensively charted the Novabond/NovaChip reference in its Preliminary Infringement Contentions and, further, asserts that the remaining pre-filing activities are based upon the same theory of invalidity as the Novabond/NovaChip reference. That is, Novabond/NovaChip technology was purportedly known and applied prior to the Asserted Patents' priority dates and the SP-081 Project, 2008 Christina Parkway Project, and the 2006 Delaware Project were mere applications of this technology, all of which appear to anticipate the Asserted Patents.

### 2. Good Cause

The next general argument ArrMaz raises is that Rieth-Riley failed to comply with Local Patent Rule 5-1(b)(3), which states that amendments identifying additional prior art must be supported by good cause and that the accused infringer "must include a separate statement providing the specific grounds for establishing good cause for the amendment." ArrMaz asserts two general violations: first, that Rieth-Riley failed to provide a statement outlining the specific grounds for good cause as to each of the pre-filing activities, and second, that good cause for the addition of these references does not exist.

Starting with the specific statement argument, Rieth-Riley's Final Invalidity Contentions do possess a Local Patent Rule 5-1(b)(3) statement section, but that section only appears to cover some of the amendments. [*See* DE 96-2 at 27–31]. Out of the pre-filing activities, only the 2006 Delaware Project is discussed for good cause. [*Id.* at 29–31]. The SP-081 Project, the 2008 Christina Parkway Project, and the Novabond/NovaChip reference are never mentioned.[12] Thus,

---

[12] An examination of Rieth-Riley's Preliminary Invalidity Contentions, however, reveals that the Novabond/NovaChip reference (as discussed under various contentions, including the Bense reference) was previously charted and examined, suggesting a statement of good cause for that reference in the Final Invalidity Contentions is unnecessary. [*See* DE 96-1, App. B].

ArrMaz is correct that Rieth-Riley was at least partially noncompliant with Local Patent Rule 5-1(b)(3). But despite this error on Rieth-Riley's part, the question remains whether good cause nonetheless exists.

Looking first at the SP-081 Project, ArrMaz asserts that Rieth-Riley either knew or should have known about this reference from documents produced by ArrMaz at least four weeks prior to Rieth-Riley filing its Preliminary Invalidity Contentions. [DE 96 at 7]. ArrMaz argues that Rieth-Riley cited to each of these documents in its Final Invalidity Contentions yet offers no explanation for why the SP-081 Project was not included in any of its Supplemental Invalidity Contentions. [*Id.* at 8]. ArrMaz goes on to say that Rieth-Riley's only argument for good cause is that ArrMaz purportedly lied about "no documents exist[ing] evidencing pre-filing public use and/or on sale activities," but does not offer anything to the contrary to suggest that the SP-081 Project was an invalidating prior public use or sale. [*Id.*]. ArrMaz essentially asserts that it did not make any false representations regarding these documents, or the SP-08 Project and that the SP-081 Project is, at most, a non-invalidating experimental use. [*Id.* at 8–9].

Moving on to the 2008 Christina Parkway Project, ArrMaz argues that Rieth-Riley has not exhibited due diligence because, prior to filing its Preliminary Invalidity Contentions, Rieth-Riley was provided with all the information about this project that it later included in the Final Invalidity Contentions. [DE 96 at 12]. And even if Rieth-Riley asserts it instead relied on the Ahmed dissertation, Rieth-Riley not only failed to establish this reference as prior art, but all the information disclosed by it was already disclosed by ArrMaz's productions. [*Id.* at 13]. This, ArrMaz contends, demonstrates an absence of good cause. [*Id.*]. Finally, ArrMaz argues that the inclusion of this reference would be prejudicial given the late stage of the case and because claim construction has been completed. [*Id.*].

Next, as to the 2006 Delaware Project, ArrMaz argues that the bases for asserting this reference are published in both an article in the magazine "Reactive Solutions" and in publicly available contract documents obtained from the State of Delaware. [DE 96 at 14–15]. Yet, as ArrMaz contends, Rieth-Riley does not explain why it did not or could not locate this information earlier. [*Id.* at 15]. In addition, the information ArrMaz asserts it disclosed in its productions contained the same information as the Reactive Solutions article which was already in Rieth-Riley's possession. [*Id.*]. Despite this, and despite having this information since January 2024, Rieth-Riley did not supplement its preliminary contentions until April 23, 2025. [*Id.* at 15–16]. Moreover, ArrMaz argues that Rieth-Riley cannot establish good cause because it did not provide the operative dates for which it requested the information from DelDOT or when it submitted any of its FOIA requests. [*Id.* at 16]. Finally, ArrMaz argues that contentions involving the 2006 Delaware Project potentially raise new claim construction issues, particularly over the limitation of a "wear surface" in the '941 Patent. [*Id.* at 17].

And lastly, as to the Novabond/NovaChip reference, ArrMaz argues that this reference was publicly disclosed long before the asserted patents were filed, and Rieth-Riley was aware of it for months before filing its Preliminary Invalidity Contentions. [DE 96 at 11]. ArrMaz goes on to say that "Rieth-Riley acknowledges that NovaChip was developed in France in the 1980s and has been in public commercial use since well before the asserted patents were filed," and moreover, that "Rieth-Riley agrees and argues that good cause does not exist to add publicly available information in final contentions" given its arguments against the inclusion of Contract R-40650-A in ArrMaz's Final Infringement Contentions. [*Id.*]. ArrMaz contends that the inclusion of this reference would prejudice ArrMaz due to the potential for additional claim

construction issues and the fact that this reference is being added at this late stage in the case. [*Id.* at 12].

In response to these arguments, specifically regarding the Novabond/NovaChip reference, the SP-081 Project, and the 2008 Christina Parkway Project, Rieth-Riley argues that ArrMaz is not unduly prejudiced by the inclusion of these contentions because ArrMaz falsely represented in its Preliminary Infringement Contentions that there were no documents demonstrating public use before the Asserted Patents' earliest priority date. Rieth-Riley contends this alleged misrepresentation prevented Rieth-Riley from disclosing these materials earlier in its Preliminary Invalidity Contentions. [DE 100 at 16–18]. Rieth-Riley further argues that a comparison to the public availability of Contract R-40650-A to exclude these references cannot be made because the contract was part of a single, searchable database. [*Id.* at 18]. In contrast, the public use references Rieth-Riley seeks to include required an expansive prior art search in a near limitless pool of publications, products, uses, patents, and other disclosure worldwide. [*Id.* (citing *Am. Innotek, Inc. v. United States*, 128 Fed. Cl. 135, 154 (2016), *aff'd*, 706 F. App'x 686 (Fed. Cir. 2017))]. In essence, Rieth-Riley argues the effort needed to search for these references, whether disclosed in ArrMaz's roughly 100,000 pages of productions or available publicly, was much more burdensome and time-consuming, thereby evidencing diligence and good cause. [*Id.* at 19].

As to the 2006 Delaware Project, Rieth-Riley argues that the denotation of this project as "experimental" is misplaced because it was DelDOT who designed it and Diamond Materials, LLC (a sub-contractor via public bid) who practiced it. [*Id.* at 14, 20]. Thus, this reference is not only non-inventive, but it also precludes ArrMaz's projects or conception documents from being experimental. [*Id.*]. Rieth-Riley further argues that good cause for including this reference exists

because Rieth-Riley outlined its diligence in obtaining this reference in its Local Patent Rule 5-1(b)(3) statement. Specifically, Rieth-Riley learned of the 2006 Delaware Project from the Reactive Solutions article, which was part of ArrMaz's approximately 100,000 pages of document productions. [*Id.* at 20]. Once the project was uncovered, Rieth-Riley asserts it promptly sent a FOIA request to DelDOT, tracked down the reference, and produced all relevant communications with DelDOT. [*Id.*; *see also* DE 100-4 (email chains between Rieth-Riley and DelDOT)]. All of this, Rieth-Riley contends, took place within a three-month span between February and April 2025. [DE 100 at 20]. Rieth-Riley argues that the promptness and extensive searching exemplifies diligence, not delay. [*Id.* at 20–21]. Finally, as to ArrMaz's claim construction argument, Rieth-Riley argues that additional claim construction is unwarranted because the amendments, including this reference, only supplement the existing invalidity theories and do not create any new ones. [*Id.* at 22].

Based on the parties' arguments, the Court finds that Rieth-Riley has demonstrated good cause for the inclusion of each of the pre-filing activities. First, it should be observed that Rieth-Riley appears to have extensively charted the Novabond/NovaChip reference, whether through the Bense reference or the NovaChip Agreements, in its Preliminary Invalidity Contentions. Thus, good cause for the inclusion of this reference may not even be necessary. Notwithstanding this, however, it is unclear how ArrMaz will be prejudiced by this reference's inclusion where the reference touches on various other contentions disclosed in the Preliminary Invalidity Contentions to which ArrMaz does not contest here. Thus, the invalidity theories being asserted, whether under § 102 or § 103, appears clear on its face.

Second, as to the SP-081 and the 2008 Christina Parkway Projects, there does appear to have been a dispute as to whether documents concerning these projects were identified as prior

public uses when document production occurred. It is not apparent to the Court, however, that ArrMaz intentionally misrepresented any of its documents, nor is it apparent that Rieth-Riley sat idly by without considering what these documents constituted. Regardless, ArrMaz should be on notice as to the basis for Rieth-Riley's assertion of these projects, and therefore any dispute is likely harmless. Further, the Court agrees that a comparison of publicly available documents cannot be made without recognizing the distinction between documents contained in a finite pool of information, like that of Contract R-40650-A, and those located in a vast sea of potential prior art. The latter most definitely involves a deeper and more exhaustive search, and thus the time needed to locate and disclose any prior art references is bound to be longer. In addition, it does not appear that ArrMaz would be prejudiced by the inclusion of these references as they neither raise additional claim construction issues, nor do they spring brand new invalidity theories on ArrMaz. In fact, the strong tie between these two references and the Novabond/NovaChip reference as applications of the latter suggests to the Court that ArrMaz should be fully aware of how Rieth-Riley intends to assert them. Again, any concern would likely be harmless.

Finally, as to the 2006 Delaware Project, there is a reasonable dispute as to whether Rieth-Riley's diligence in searching for and acquiring this reference was necessary when the same information disclosed by ArrMaz's extensive document products was also publicly available. While it may have been publicly available, however, the same concern involving the time needed to conduct prior art searches is relevant. Either way, it is apparent to the Court that Rieth-Riley, in sifting through the approximately 100,000 pages of document productions, locating the project, requesting information about it from DelDOT, and disclosing its communications with DelDOT, acted diligently. Likewise, as with the SP-081 and 2008 Christina Parkway Projects, it is not clear on its face that ArrMaz would be prejudiced by its

33

inclusion where the theory of invalidity can be traced back to Rieth-Riley's charting of NovaChip technology in its Preliminary Invalidity Contentions. In essence, no new theories are being advanced. Finally, it is unclear what additional claim construction ruling would need to be made. While ArrMaz identifies a potential new claim limitation that would require construction, it is not stated why or in what way.

Therefore, upon reviewing the totality of the parties' arguments, both regarding Local Patent Rules 3-1 and 5-1, the Court finds that good cause exists for the inclusion of each of the pre-filing activities.

### C. Knoll, Keiter, and Kandhal References

Moving on to the next group of references, ArrMaz argues that Rieth-Riley adds fourteen publications that were never previously mentioned in its Preliminary Invalidity Contentions. [DE 96 at 17]. Part of these publications include a 1999 final report by the Pennsylvania Department of Transportation ("Knoll reference"), an article on the application of NovaChip technology in Pennsylvania ("Keiter reference"), and two articles on pavement evaluation ("Kandhal references"). These references were initially disclosed by Rieth-Riley in its January 28, 2025, Supplemental Invalidity Contentions, in which Rieth-Riley states that it became aware of the Knoll and Keiter references following document productions from ArrMaz and subsequently became aware of the Kandhal references from Knoll and Keiter. [DE 96-2 at 28]. ArrMaz argues that these documents were publicly available prior to the filing of the asserted patents and that Rieth-Riley makes no attempt to explain why the documents could not have been identified earlier in its Preliminary Invalidity Contentions. [DE 96 at 19]. ArrMaz further asserts that it is unfairly prejudiced by new invalidity theories being raised by these references, as well as the

possibility of new claim construction issues lurking within these references which ArrMaz

should not be required to evaluate at this late stage in the case. [*Id.*].

In response, Rieth-Riley argues it identified these references six months prior to filing its

Final Invalidity Contentions and the amendment was a result of newly discovered evidence after

combing through ArrMaz's 100,000 pages of document productions. [DE 100 at 21]. Rieth-Riley

further argues that it immediately disclosed the documents upon discovering them. [*Id.*].

A review of Rieth-Riley's invalidity contentions reveals that the Knoll, Keiter, and

Kandhal references are being asserted as additional applications of NovaChip technology. [*See*

DE 96-2, App. B. at 250–317]. This suggests that the invalidity theories being asserted would be

equivalent or similar enough to the theories being posed under the pre-filing activities.

Moreover, there is no indication that Rieth-Riley delayed in locating and producing these

references in its Supplemental Invalidity Contentions. Lastly, it is never identified or discussed

in detail what claim construction issues may be lurking beneath these references, nor is it defined

how ArrMaz would be prejudiced by the inclusion of these references. Therefore, the Court finds

there is good cause to include these references in the Final Invalidity Contentions.

### D.  Reference Nos. 49–54

Finally, looking at the last group of contentions in dispute, which are also part of the

fourteen references not previously disclosed, ArrMaz asserts that Rieth-Riley failed to provide a

good cause statement under Local Patent Rule 5-1. [DE 96 at 19]. ArrMaz argues that to the

extent these references are intended to disclose the "state of the art" regarding the Asserted

Patents, there is no reason that they could not have been presented earlier in the case. [*Id.* (citing

DE 96-2 at 5 n.2)]. Rieth-Riley goes on to argue that if these references do not relate to

invalidity, then they serve no viable purpose in being in the Final Invalidity Contentions and should be excluded on that basis as well. [DE 107 at 13].

Rieth-Riley responds by contending that these are simply de minimis amendments meant to provide background on the state of the prior and nothing further. [DE 100 at 22]. Rieth-Riley goes on to argue that it has made clear since filing its Preliminary Filing Contentions that it would invoke the use of background prior art for this purpose. [*Id.*]. On this basis, Rieth-Riley argues that no good cause statement should be required.

But unlike the previous contentions discussed above, Rieth-Riley does not explain how it was diligent in obtaining and disclosing these references, nor does it explain how ArrMaz would not be unduly prejudiced. In fact, it seems irrelevant to include these references in the final set of invalidity contentions where they are not even being asserted to invalidate ArrMaz's patents. Thus, these references should be excluded.

### E.  Conclusion

Rieth-Riley has shown good cause for amending its Final Invalidity Contentions to include each of the pre-filing activities, as well as the Knoll, Keiter, and Kandhal references. Good cause does not exist, however, for the addition of Reference Nos. 49 through 54, and thus those references shall be excluded.

### III.    Summary Judgment Briefing

The final matter to discuss is the impact of the Court's ruling on the parties' Motions as they may pertain to summary judgment motions which have already been filed. [*See* DE 123; DE 126]. Because the Court's rulings on one or both Motions may alter the arguments raised in either of the parties' cross-motions for summary judgment, the Court establishes the following briefing timeline as to both parties' motions: Both parties may amend their respective motions

for summary judgment and must file the amended motions within 30 days following the entry of this Order and Opinion. Response briefs for each motion will be due 14 days after. Reply briefs will be due 7 days after that.

## CONCLUSION

Rieth-Riley's Motion to Exclude [DE 93] is **GRANTED IN PART, DENIED IN PART**. Specifically, the Court grants Rieth-Riley's request to exclude Contract R-40650-A, denies the request to exclude the doctrine of equivalents, and the denies the remainder of the Motion as moot. As to ArrMaz's Motion to Exclude [DE 96], that Motion is likewise **GRANTED IN PART, DENIED IN PART**. The Court grants the request to exclude Reference Nos. 49 through 54 but denies the request as to everything else. Finally, the parties are ordered to file their summary judgment briefings in accordance with the updated briefing timeline.

SO ORDERED.

ENTERED: March 4, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court